## MILLER *v.* NEW ORLEANS ACID & FERTILIZER COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 32. Argued December 1, 1908.—Decided January 4, 1909.

Where the state court decides that a trustee in bankruptcy can avoid a preference under the state law against the contention that the exertion of such power conflicts with the bankrupt law, and that if the preference is given by a member of a firm that the trustee need not establish that there were other individual creditors, Federal questions are involved and necessarily decided, and the judgment does not rest on non-Federal grounds broad enough to sustain it and may be reviewed by this court under § 709, Rev. Stat.

Where no question is made below that the state court was not competent to authorize the trustee to prosecute, judgment in his favor will not be reversed when presumably the want of authority from the bankrupt court would have been supplied if challenged.

The authority to preserve liens of pending actions under subd. *f* of § 67 of the bankrupt law extends to causes of action under state law and is cumulative, and not in abrogation of rights under the state law.

Where, as in Louisiana, copartnership creditors coequally share with individual creditors in the individual estates of the members of the firm, copartnership creditors are prejudiced by preferences made by

a member to individual creditors, and, if the preference is illegal under state law, the trustee can succeed to a suit of the partnership creditor in the state court even if there be no other individual creditors; but the distribution of the preferential payment when paid in depends, as between the individual and copartnership creditors, on the provisions of § 5 of the bankrupt law.

THE facts are stated in the opinion.

*Mr. E. B. Dubuisson,* for plaintiff in error.

*Mr. William J. Sandoz,* with whom *Mr. G. L. Dupré* was on the brief, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

The law of Louisiana considers the property of the debtor as the common pledge of all his creditors. C. C. 1969. As a general rule, therefore, it contemplates an equality of right in all creditors as to all the property of the debtor, existing at the time an obligation against the debtor arises, unless a creditor, as the result of some lawful contract or from the particular nature of the debt to which the law gives a preference, has acquired a higher and privileged right to payment than that which belongs to the general mass of creditors. C. C. 1968. Under that law the creditors of a partnership are preferred as to the partnership assets over the individual creditors of the members of the firm. C. C. 2823. This privilege does not, however, conversely exist, since it has been held from an early day in that State that individual creditors of members of the firm have no preference on the individual assets of the estate of the members of a firm, and therefore the partnership creditors and the individual creditors have a concurrent right to payment out of the individual estates. *Morgan* v. *Creditors,* 8 Martin (N. S.), 599; *Flower* v. *Creditors,* 3 La. Ann. 189.

As a result of the common pledge which all creditors are presumed to have upon the property of their debtors the law of Louisiana gives to every creditor an action to revoke any contract made in fraud of their common right of pledge. C.

C. 1970–1977. As a consequence it is permissible to attack, even collaterally, any mere fraudulent and simulated (that is, fictitious and unreal) transfer of his property by a debtor. See authorities collected in 2 Hennen's Digest, verbo Obligations VII, p. 1031. This right, however, even in case of bad faith, does not enable a creditor to avoid a real contract of a debtor unless the act has operated to the injury and prejudice of creditors who were such at the time the act sought to be revoked was done. C. C. 1937. Every contract, however, is deemed to have been in fraud of creditors and prejudicial to their rights "when the obligee knew that the obligor was in insolvent circumstances and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor." C. C. 1984. From this rule are excepted sales of property or other contracts made in the usual course of business and all payments of a just debt in money. C. C. 1986. But this exception does not include the "giving in payment to one creditor to the prejudice of others any other thing than the sum of money due." C. C. 2658.

In 1903 the commercial firm of O. Guillory & Co., composed of Olivrel Guillory, Olivrel E. Guillory and Ambrois Lafleur, carried on business in the State of Louisiana. In 1904 the senior member, Olivrel Guillory, sold various parcels of real estate, which were his individual property, as follows: One sale to J. A. Fontenot, another to Alexandre Miller, and a third to John A. and Samuel Haas. All these sales were, apparently, on their face not susceptible of being assailed by creditors, because in form they were embraced within the excepted class to which we have referred.

On February 2, 1905, three corporations—which, for the sake of brevity, we shall designate as the Wooden Ware, the Fertilizing and the Elevator Companies—sued in a state district court the firm of O. Guillory & Co., the senior member, O. Guillory, individually, and the purchasers at the respective sales above mentioned. As to the first company, the cause of action was based upon an alleged open account for the purchase

price of goods sold to the firm prior to the making of the sales by the senior partner of his individual property above mentioned. As to the two other corporations the action was based upon notes held by the corporations signed by the individual members of the firm, and averred to have been given for the price of merchandise bought, also prior to said sales, from the corporations by the firm, it being alleged that the notes signed by the individual members had been received by the corporations as cumulative, and not in any wise as a novation of the firm obligation to pay the price of the goods by it bought. The sales were attacked as fraudulent simulations, or, if not unreal, as subject to be revoked, because they were made at a time when the firm was notoriously embarrassed or insolvent to the knowledge of the purchasers, and were not within the excepted class, because they were, in substance, not what they purported to be, but were givings in payment of the individual property of O. Guillory in order to prefer the purchasers.

The prayer was for a judgment for the amount of the debts, for a revocation of the sales, for a direction that they be sold by judicial decree to pay the judgments to be rendered, the payments to be made by preference out of the proceeds arising from the sale.

The cause was put at issue by general denials filed for the firm, for O. Guillory individually and for the purchasers. Before trial, in consequence of an adjudication in bankruptcy as to Guillory & Co., made on April 28, 1905, a petition was filed in the cause by W. J. Sandoz, alleging himself to be "the duly appointed and qualified trustee of the bankrupt estate of O. Guillory & Co." It was alleged that "since the institution of this suit the said O. Guillory & Co. have made application for and been adjudged bankrupts in the District Court of the United States for the Western District of Louisiana." And it was further averred that under the bankrupt law of the United States "the trustee succeeds to the rights of the creditors who may have brought actions to annul any transactions

affecting the property of the bankrupts, and the law makes it his duty to prosecute the same for the benefit of the said bankrupt estate in his capacity as trustee." The prayer of the petition was that Sandoz, as trustee, "be made a party plaintiff in this suit and duly authorized to prosecute the same to final judgment for the benefit of said bankrupt estate of O. Guillory & Co." The state court, after notice to the parties, entered an order substituting Sandoz as party plaintiff in his capacity "as trustee of the estate of O. Guillory & Co. . . . with authority to prosecute the same to final judgment for the benefit of said bankrupt estate."

Sandoz, trustee, was thereafter the sole plaintiff, and prosecuted an appeal to the Supreme Court to reverse a judgment of the trial court sustaining the sales. The Supreme Court, for reasons given in an elaborate opinion, held the sale to Fontenot to have been simulated and sustained the validity of the Haas and Miller sales. It was found that Olivrel Guillory had made the sales of his individual property principally for the purpose of assisting the firm which was embarrassed as the result of a decline in the price of cotton held by the firm; that at the time Guillory had no individual debts whatever, except one of three thousand dollars due to Miller and another of six thousand dollars, which was assumed and provided for in the Haas sale. Granting a rehearing asked by trustee Sandoz, a different conclusion was reached as to the Miller sale. The court found that when that sale was made Guillory owed Miller three thousand dollars, and although the price of seventy-five hundred dollars was actually paid to Guillory, yet as immediately after the sale Guillory had paid the three thousand dollar debt which he owed to Miller, "the transaction was an indirect preference of the son-in-law (Miller) over other creditors by a disguised giving in payment." This writ of error sued out by Miller was allowed by the chief justice of the state court.

By the assignments of error it is contended, first, that the court erred in testing, at the instance of Sandoz, trustee, the

validity of the sale to Miller by the state law instead of by the bankrupt law of the United States, which was alone controlling; second, under the bankrupt law of the United States the court erred in holding that the transfer by Guillory of his individual property to pay Miller, his individual creditor, was revocable, although there was no other individual creditor to be prejudiced thereby; and, third, that in any event the court erred in holding that prejudice could have resulted under the bankrupt law to individual creditors by the sale to Miller without ascertaining whether there were such creditors who could have been prejudiced. In other words, that the court erred in decreeing the sale to Miller to the extent of three thousand dollars to be revocable as a prejudicial preference, and at the same time relegating to the bankruptcy court the determination of whether there were any individual creditors who could have been prejudiced; thus decreeing a preference and yet declining to determine a question which was essential to be ascertained before a preference could be adjudged.

Our jurisdiction is challenged, first, because it is urged no Federal question was set up or claimed in the trial court, and therefore no such question was cognizable by the Supreme Court; second, because no Federal question was raised in or decided by the Supreme Court; third, even if incidentally a Federal question may have been passed upon below, nevertheless the court based its conclusions upon a non-Federal ground broad enough to sustain its judgment. The first question is involved in the second, because if the court below decided a Federal question we may not decline to review its action in so doing upon the assumption that the court transcended its powers under the state law by passing on a question which it had no right to examine because not raised in the trial court. The second contention embraces an irrelevant element, that is, that no Federal question was raised in the court below, since if such a question was expressly decided by the court our duty to review may likewise not be avoided by assuming that the court decided a question not raised in the cause.

The proposition, therefore, reduces itself to this: Did the court below expressly decide a Federal question adversely to the plaintiff in error?

In its opinion on the rehearing the court said:

"The trustee in bankruptcy, was, on his own petition, made a party plaintiff and was authorized by order of court to prosecute the suit to final judgment for the benefit of the bankrupt estate. Neither the capacity of the trustee nor his right to stand in judgment have been questioned. It is argued, however, by counsel for Miller that the partnership alone was adjudged a bankrupt and not the members as individuals, and that as Miller, under the bankrupt act of 1898, is entitled to be paid by preference over partnership creditors out of the net proceeds of the individual estate of O. Guillory, plaintiffs were not prejudiced by the payment of the note held by Miller out of the individual assets of the debtor. The answer to this contention is that the petition of the bankrupt shows that O. Guillory filed schedules of his individual debts and of his individual property. 'Where a firm goes into bankruptcy it is a proceeding against each and every member, and both the firm and individual assets must be administered in bankruptcy.' Collier on Bankruptcy, p. 60. Hence all rights of preference must be determined by the court having jurisdiction of the insolvency."

In view of the statement that no question was raised "as to the capacity of the trustee and his right to stand in judgment," and the fact that the record does not contain the full proceedings had in the bankruptcy court, and the further fact that no question as to the capacity of the trustee is raised in the assignment of errors, we take it that the intimation made by the court concerning the effect of the adjudication of a firm as being also an adjudication of the individual estates of the members was but a method of reasoning resorted to by the court to sustain its decision concerning the right of the trustee to avail of the state law under the circumstances of the case, irrespective of the rule as to preferences provided in the bank-

rupt law, and, further, to support its conclusion that it was its duty to abstain from determining whether there were individual creditors who were prejudiced, and to remit that question to the court in which the bankruptcy proceedings were pending.

But thus limiting the passage referred to it nevertheless results that the court below both considered and necessarily decided two distinct Federal questions: First, the right of the trustee to avoid a preference under the state law, although it was contended that the exertion of such power was in conflict with the bankrupt law; and, second, that the preference might be avoided under the state law at the instance of the trustee without establishing that there were creditors of the individual estate. So far as the third contention concerning jurisdiction it is apparent from what we have just said that it is without merit. While it is true that the court applied the state law in testing the existence of the preference, such application of that law is obviously not alone broad enough to sustain its conclusion that the trustee under the bankrupt law had the right to avail of the preference under the state law, and this is also true concerning the ruling that there was power to determine the preference under the state law without previously ascertaining the existence under the bankrupt act of individual creditors.

We come then to the merits. Eliminating, as we have done, the expressions of the court below, as to the effect of the adjudication in bankruptcy of the partnership upon the estates of the individual members, we need not approach the very grave question which would arise for consideration if that subject had been decided by the court below. *In re Stokes,* 106 Fed. Rep. 312; *Dickas* v. *Barnes,* 140 Fed. Rep. 849; *In re Bertenshaw,* 157 Fed. Rep. 363.

While § 5 of the bankrupt act expressly authorizes an adjudication in bankruptcy against a firm, the controlling provisions following are the direct antithesis of the rule prevailing in the State of Louisiana.

Thus, subdivision *f* of § 5 commands that "the net proceeds of the partnership property shall be appropriated to the pay-

ment of the partnership debts, and the net proceeds of the
individual estate of each partner to the payment of his indi-
vidual debts. Should any surplus remain of the property of
any partner after paying his individual debts, such surplus
shall be added to the partnership assets and be applied to the
payment of the partnership debts." To enforce these pro-
visions the act compels (sub. *d*) the keeping of separate ac-
counts of the partnership property and of the property belong-
ing to the individual partners; the payment (sub. *e*) of the
bankrupt expenses as to the partnership and as to the individual
property proportionately; and, permits (sub. *g*) the proof of
the claim of the partnership estate against the individual estate,
and *vice versa*, and directs the marshalling of the assets of the
partnership estate and the individual estates, "so as to pre-
vent preferences and secure the equitable distribution of the
property of the several estates."

Now, by § 60 of the bankruptcy law, as amended by the act
of 1903, it is provided that a person shall be deemed to have
given a preference "if, being insolvent he has, within four
months before the filing of the petition or after the filing of
the petition, and before the adjudication . . . made a
transfer of any of his property, and the effect of the enforce-
ment of such . . . transfer will be to enable any one of
his creditors to obtain a greater percentage of his debt than
any other of such creditors of the same class." It is obvious
that if at the time of the alleged preferential transfer to Miller
there were no other creditors of the individual estate of Guillory
than Miller. under the rule laid down by the bankrupt act,
the transfer to him of assets of the individual estate in pay-
ment of an individual debt did not constitute a preference.
That it might have constituted a preference under the state
law results from the difference in the classification made by
the state law on the one hand and the bankruptcy law on the
other. So, also, it is evident, having regard to the separation
between the partnership and individual estates made by the
bankrupt act and the method of distribution of those estates,

that if there were no individual creditors and the sum paid to Miller was returned to the estate as a preference, it would be his right to at once receive back by way of distribution that which he was obliged to pay in upon the theory that it was a preference.

The questions then to be decided are these, 1st, Was the trustee authorized by the bankrupt law to avoid the sale to Miller to the extent of the three thousand dollars which constituted the giving in payment under the state law? And, 2d, if so, was it incumbent on the trustee, under the bankrupt act, to such recovery to show the existence of individual creditors at the time the giving in payment to Miller took place who were prejudiced thereby, and if not was the trustee obliged to show the existence of individual creditors at the time of the adjudication in bankruptcy who would be prejudiced in the distribution of the bankrupt estate if the giving in payment to Miller was not annulled?

As the suit by the creditors was brought within four months before the adjudication in bankruptcy, their right to a lien or preference arising from the suit was annulled by the provisions of subdivision $f$ of § 67 of the bankrupt law. But that section authorized the trustee, with the authority of the court, upon due notice, to preserve liens arising from pending suits for the benefit of the bankrupt estate, and to prosecute the suits to the end for the accomplishment of that purpose. *First National Bank* v. *Staake*, 202 U. S. 141. It is inferable that the parties proceeded upon the erroneous conception that the state court, where the suit was pending, was competent to authorize the trustee, but as no question on that subject was made below or is here raised, we may not reverse the judgment in favor of the trustee because of the absence of authority from the bankrupt court, when presumably the want of authority would have been supplied had its absence been challenged. Assuming, therefore, that the trustee was properly authorized, it follows that he was entitled to preserve and enforce the privilege or lien, which arose in favor of the cred-

itors, resulting from their pending action, even although the
cause of action arose from the state law, and the application
of that law was essential to secure the relief sought. To the
accomplishment of this end the bankrupt law was cumulative
and did not abrogate the state law. See *Keppel* v. *Tiffin Sav-
ings Bank*, 197 U. S. 356.

Undoubtedly, the trustee, in prosecuting the suit to judg-
ment was obliged to prove the existence of the facts which were
essential under the state law, since to hold otherwise would be
but to decide that he could recover without proof of his right
to do so. But as under the state law creditors of the partner-
ship had a coequal right to payment with the individual cred-
itors of a member of the firm out of his individual estate, it
follows that even if there had been no individual creditor but
Miller, recovery was justified because of the prejudice suffered
by the partnership creditors as the result of the giving in pay-
ment made by Guillory to Miller. In view of the distinction
between the estates of partnerships and the estates of the mem-
bers of the firm, which is made by the bankrupt law, and the
method of distribution for which that law provides, of course
the trustee will hold the fund as an asset of the estate of the in-
dividual member, and primarily for the benefit of his creditors.
Although, on proof of the claims against such individual es-
tate, if it be that Miller is the only individual creditor he will
be entitled, by way of distribution, to the full amount paid
in by him because of the method of distribution ordained by the
bankrupt law, that fact does not establish that there was a
necessity, in order to avoid the preference under the state law,
to make proof that at the time of the alleged giving in pay-
ment there were other individual creditors who were prejudiced.
While the power in the state court to pass on the question of
preference involved the duty of deciding whether, at the time
of the assailed transaction there were creditors to be prejudiced,
that duty did not involve ascertaining what creditors, at the
time of the adjudication in bankruptcy, were entitled to par-
ticipate in the distribution. The one was within the province

of the state court for the purpose of the case before it; the other
was a different question, depending on independent considera-
tions exclusively cognizable in the bankruptcy court. The
state court was, therefore, right in so deciding.

*Affirmed.*