In re HURST.

WASHINGTON et al. v. TEARNEY et al.

(Circuit Court of Appeals, Fourth Circuit. March 14, 1912.)

No. 1,068.

BANKRUPTCY (§ 157*)—FRAUDULENT CONVEYANCES—PARTICIPATION IN PROCEEDS—RECOVERY OF DIVIDENDS.

A bankrupt, being indebted to the county in the amount of $15,000 for defalcation as sheriff, obtained a loan of the amount from decedent, his father-in-law, to settle the defalcation, and on December 4, 1896, as

part of the same transaction, executed conveyances of certain real estate to decedent as security for the debt. These were not recorded, but were found among decedent's papers after his death in 1902, after which they were recorded by the executors, September 12th, 11 days prior to the grantor's adjudication as a bankrupt. The executors filed a claim for the indebtedness which was proved and allowed, after which the bankrupt's trustee instituted suit in a state court to set aside the conveyances for the benefit of "all" the bankrupt's creditors, and, being successful, the property was sold and the proceeds distributed; dividends being paid therefrom to the executor. *Held* that, the trustees having sued to set aside the conveyances for the benefit of all creditors, they could not thereafter claim that the dividends paid to the executors should be repaid because the land had been conveyed in fraud of creditors, participated in by the decedent in withholding the conveyances from record.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 237, 238; Dec. Dig. § 157.*]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Martinsburg, in Bankruptcy.

In the matter of bankruptcy proceedings of J. Garland Hurst. On petition of J. F. Tearney and another, the surviving executors of Edward Tearney, deceased, to revise the decision of a referee requiring repayment of dividends received by them on a claim in proceedings instituted by S. W. Washington and another, surviving trustees of the bankrupt. From a decree reversing the ruling of the referee (188 Fed. 707), the trustees appeal. Affirmed.

James M. Mason, Jr., for appellants.
Forrest W. Brown and R. T. Barton, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The appellants are the surviving trustees in bankruptcy of J. Garland Hurst. They will be called the trustees. He the bankrupt.

The appellees are the executors of Edward Tearney. They will be styled the executors. The deceased the creditor.

Prior to December 4, 1896, the bankrupt owed the creditor a large sum of money. Moreover, at that time the creditor was indorser or surety for the bankrupt. As such he was subsequently called upon to make good sums that the bankrupt should have paid but did not.

At the time of the filing of the petition in bankruptcy, the amount due from the bankrupt to the executors on account of this indebtedness contracted before December 4, 1896, or for which the creditor at that time had become liable, was $18,166.22. No part of this sum was in any wise connected with the transactions that took place on the last-mentioned day. At some prior time the bankrupt had been sheriff of Jefferson county, W. Va. As such he had become indebted to the state in the sum of $15,000. He had been elected to the Legislature. He could not take his seat until he paid the state what he owed it. The creditor was his father-in-law. He asked the latter to let him have the needed $15,000. The request was granted. The money was paid

to or for him. On December 4, 1896, as a part of the same transaction, he executed two deeds, one for a farm of 157 acres; the other for his dwelling house in Harpers Ferry. The consideration named in the conveyance of the farm was $8,000; in that of the house $6,000.

The creditor lived until March, 1902. He never recorded either of the deeds. The bankrupt remained in possession of both the farm and the residence. To the public he appeared to be still their owner. After the creditor's death, the executors found the deeds among his papers. The bankrupt asked that they should not be recorded until he had opportunity to put his business affairs into better shape. In compliance with this request the executors withheld them from record until September 12, 1902. Eleven days later the bankrupt was adjudicated on his own petition.

The executors promptly filed in the bankruptcy proceedings their claim for $18,166.22, the amount of the indebtedness which was altogether apart from the dealings with the farm and house. This claim was properly proved. It was allowed. No question has ever been made that it was both provable and allowable.

On the 10th of March, 1903, the bankrupt court directed the trustees to file a bill in the state court to avoid the two deeds in question and "to recover the property thereby conveyed for the benefit of the creditors of the bankrupt estate." The trustees filed such a bill in the circuit court for Jefferson county. They made the executors and the heirs of the creditor defendants. They alleged, among other things, that:

"The debts proved in bankruptcy against the said J. Garland Hurst, entitled to participate in the distribution of the estate amount, with interest (*to*) September 23, 1902, to the sum of $55,930.42, and the trustees report filed in said bankruptcy proceeding show that the assets, other than these pieces of property, will not pay as much as 10 per centum, and *all* of the said creditors have a right to have said two deeds set aside as to their debts, as being fraudulent as to creditors." (The italics are ours.)

This sum of $55,930.42 included the claim of $18,166.22 filed by the executors, as well as the sum of $2,000 more which was claimed for the rent of the house and farm. This latter sum was subsequently disallowed in Re Hurst, 23 Am. Bankr. Rep. 554.

The circuit court for Jefferson county dismissed the bill on final hearing. Its decree was on appeal reversed by the Supreme Court of Appeals of the state. Moore v. Tearney, 62 W. Va. 72, 57 S. E. 263.

The opinion directed that the lower court should decree the sale of the property for the benefit of the plaintiffs as trustees in bankruptcy. The mandate adjudged that the deeds "be and the same are hereby held void and set aside as to the rights of the plaintiff trustees." The property was thereupon sold. Its net proceeds were paid over to the trustees. Those proceeds were divided among the creditors by two distribution accounts stated by the trustees. Without objection dividends were allowed and paid to the executors on their claim for $18,166.22. These two dividends amounted to $4,188.46.

On the 6th of June, 1909, the trustees began this proceeding. By their petition then filed they asked that the executors be required to repay the dividends so paid them. This action was not taken until

more than six years after the same trustees had asked the state court to set aside the fraudulent deeds in order that the property included by them might be distributed among *all* the creditors, including among such creditors the executors as to their claim of $18,166.22. The referee ordered the executors to repay the dividends. On petition for review, the learned judge below in a careful opinion reversed the ruling of the referee. He dismissed the petition of the trustees. They appealed to this court.

They say that their petition should have been granted, even if the proceeds of the sale of the farm and residence constituted general assets of the bankrupt estate in the hands of the trustees. They argue that a court of bankruptcy is a court of equity and will therefore postpone the claim of the executors to those of the creditors who were not parties to the fraud. They urge that the creditor's fraudulent conduct in withholding the deeds from record gave a fictitious credit to the bankrupt. Had they been recorded, the latter would not have been able to contract the $35,000 of debts, which at the time of his bankruptcy he owed to others than the executors.

A court of bankruptcy is undeniably in many senses a court of equity. It is guided by equitable principles in the administration of its relief. It will not enforce a fraudulent transaction. It will not aid any one to profit by his own wrong. It will usually, if not always, refuse to help one to recover property which he has let pass out of his hands with intent to defraud. The executors are not now making any claim with reference to the $15,000 which the creditor paid to or for the bankrupt at the time of the delivery of the fraudulent deeds and as a part of the same transaction. If they were, the principles invoked by the trustees might well be applicable. That question is, however, not before us. We express no opinion upon it.

To the extent that a court of bankruptcy is a court of equity it cannot be a criminal court. Except where specially authorized by statute, it may not punish men for an offense by decreeing the forfeiture of rights which have no connection with the wrong of which they have been guilty. Keppel v. Tiffin Savings Bank, 197 U. S. 363, 25 Sup. Ct. 443, 49 L. Ed. 790.

Courts of equity abhor forfeitures. They have neither the will nor the power to take from a man who has committed a fraud property which he has honestly acquired and which he has not in any way made use in furtherance of the wrong he has done. One who has suffered by his fraudulent conduct may compel him to make good the damage he has done. Such redress may be sought by appropriate proceedings in a court of law or equity, and a judgment or decree there obtained may be, as a matter of course, enforced against any of the assets of the defendant. The circumstances under which a court of bankruptcy could administer such relief would be rare, if they could exist at all. It may be called on in some cases to distinguish between prior and subsequent creditors and to determine which of the latter, if any, had actual or constructive notice of some transaction. We know of no jurisdiction it has to inquire how many of the bankrupt's other creditors became such in a whole or in part because of the failure of

194 F.—53

the creditor to record his deeds. It may not ordinarily require him to make partial restitution to such as it may find were so induced to trust the bankrupt by applying to the purposes of such restitution property of his which was in no wise concerned in any of the fraudulent transactions.

The trustees say that, however this may be they are still entitled to recover. They contend that under the bankrupt law these deeds of house and farm were not void as to the trustees. If they were not, they assert that the assets recovered by the trustees were recovered in the right of those creditors only who could have avoided those deeds in the state court had not bankruptcy intervened. In that event they say that the assets so recovered must be distributed among the creditors in the way in which the state court would distribute them. In their view the facts of this case bring it within the rule laid down by this court in Simmons v. Greer, 174 Fed. 654, 98 C. C. A. 408, and not within that applied by the Supreme Court in Miller v. New Orleans Fertilizer Co., 211 U. S. 496, 29 Sup. Ct. 176, 53 L. Ed. 300. They apparently overlook the difference between the effects of fraud in fact, as in this case, and a mere failure to file a mortgage otherwise valid against the world as in Simmons v. Greer, supra. The Supreme Court calls attention to this distinction in Security Warehousing Co. v. Hand, 206 U. S. 427, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789. The argument, of course, assumes that the trustees had no power in their own right to avoid the deeds in question. They point out that section 67e of the Bankrupt Law (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) declares void only those fraudulent conveyances which were made subsequent to the passage of the bankrupt act and within four months prior to the filing of the petition for adjudication. These deeds were executed December 4, 1896. It was more than 18 months before the bankrupt act became a law. It was 5 years and 10 months before the petition in bankruptcy was filed in this case.

In the view we take, it is unnecessary for us to consider whether as against the trustees these deeds can be said to have been made on December 4, 1896, and not on September 12, 1902, at which latter date they were for the first time recorded or in any wise acted upon. Nor are we concerned to inquire whether the provisions of section 70a, by which the trustee is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt to property transferred by the bankrupt in fraud of his creditors, did not make the house and farm assets of the bankrupt estate so soon as a court of competent jurisdiction had judicially decreed that such property had been transferred by the bankrupt in fraud of his creditors.

Without going into such questions, we are, for the purposes of this case and *for those purposes only, content to assume without in any wise deciding*:

(1) That the trustees are right in asserting that their bill was filed under the provisions of section 70e and under those provisions alone.

(2) That against seasonable objection no bill would have been sustained in the state court unless it had been filed in the right of those creditors only entitled under the state law to attack the conveyance.

(3) That the trustees are right in asserting that the property recovered by them upon such a bill would have to be distributed by them among the creditors against whom the state court declared the conveyance to be void, and among those creditors alone.

We shall not follow the learned and zealous counsel for the trustees in his analysis of the statutes and decisions of West Virginia on the subject of fraudulent conveyances. It is unimportant to determine how we would have construed and applied those statutes and decisions to the facts of the record submitted to the Supreme Court of Appeals of West Virginia. We do not go into any of these questions, because the trustees themselves asked the state court to declare these deeds void as to them as representing *all* of the creditors, including the executors. The highest court of the state did what they asked it to do. It does not lie in their mouths now to say that in so doing it erred. The property in this case must be distributed equally and ratably among those creditors whose claims have been proved and allowed. The court below was right in dismissing the petition of the trustees.

Affirmed.