## In re RIEHL.

### In re SECOND NAT. BANK OF BALTIMORE.

#### (District Court, D. Maryland. November 12, 1912.)

BANKRUPTCY (§ 345*)—CHATTEL MORTGAGES—VALIDITY UNDER LAW OF MARYLAND.

> Under the law of Maryland, as settled by decision of its highest court, while the recording act makes unrecorded chattel mortgages invalid as to subsequent creditors of the mortgagor, they are valid as against debts previously contracted, even where levies are made thereunder; and the right of a chattel mortgagee, although his mortgage is unrecorded, to priority in bankruptcy over such creditors in the proceeds of the mortgaged property, is not affected by Bankr. Act July 1, 1898, c. 541, § 47a(2), 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), which vests the trustee with the rights and powers of a creditor holding a lien by legal or equitable proceedings.
>
> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

In the matter of John H. Riehl, bankrupt. On review of order of referee denying claim of priority of the Second National Bank of Baltimore in the proceeds of mortgaged property. Reversed.

William H. Hudgins, of Baltimore, for claimant.
G. W. S. Musgrave, of Baltimore, for trustee.

ROSE, District Judge. At the time of the filing of the petition in this case the bankrupt was in possession of certain vessels. Of some of them he was the sole owner. In others, there were co-owners. More than four months before the filing of the petition in bankruptcy,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep r Indexes

he had mortgaged his interest in all these vessels to the Second National Bank of Baltimore to secure an indebtedness of $14,000. Among the vessels covered by this mortgage was the Hoister Calvin. Of it the bankrupt was the sole owner. The other mortgaged vessels were documented at the Baltimore custom house. The Calvin was not. The mortgage was recorded at the custom house, and not elsewhere. By order of this court the interest of the bankrupt in these vessels was sold free of liens and incumbrances. The Hoister Calvin brought $1,600. It is this sum, less its proportional share of the expense of making such sale, that is now in controversy.

The bank claims it under its mortgage. The trustee says the bank has no right to it superior to that of the other general creditors of the bankrupt. The referee held that section 41 of article 21 of the Code of Public General Laws of Maryland applies to a mortgage upon an undocumented vessel. That section reads:

"No personal property of any description whatever, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto."

It is admitted that in so holding the referee was right, as he was in deciding that the bank's mortgage was not recorded as the law requires. He further found that the bank had no preferred claim against the net proceeds of the Calvin. He was of opinion that this conclusion was required by the provisions of section 47, clause 2, subdivision "a" of the Bankruptcy Act, as amended by the Act of June 25, 1910, which provides:

"That as to all property in the custody, or coming into the custody, of the bankruptcy court the trustee shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon."

The bank says that the referee in so finding was in error. It has brought the case here upon a petition for review.

It should be borne in mind that the question to be here decided is essentially one of priority of distribution, rather than one of title. Holt v. Crucible Steel Co., 224 U. S. 263, 32 Sup. Ct. 414, 56 L. Ed. 756; Simmons v. Greer, 174 Fed. 654, 98 C. C. A. 408.

Section 64, paragraph 5, clause 5, of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]), gives precedence over claims of general creditors to debts owing to any person who by the laws of the states or of the United States is entitled to priority. Ordinarily a court of bankruptcy will recognize and enforce such priorities as may be given by the state law. The exceptions are those cases in which the Bankruptcy Act itself fixes the nature and extent of the preference to which a particular creditor or a particular class of creditors shall be entitled. For example, it says that wages due to workmen, clerks, traveling or city salesmen, or

servants which have been earned within three months before the date of the commencement of proceedings, not to exceed $300 to each claimant, shall be preferred, and that partnership property shall be first applied to partnership debts and individual property to individual debts. When Congress has thus spoken, its will prevails over all state statutes. In re Slomka, 122 Fed. 630, 58 C. C. A. 322; Miller v. New Orleans Acid & Fertilizer Co., 211 U. S. 496, 29 Sup. Ct. 176, 53 L. Ed. 300.

The Bankruptcy Act, however, does not prescribe, in distributing assets, what effect shall be given to the provisions of the recording laws of the states. Such questions must be determined by the state statutes and by the construction which the state courts have put upon them. Holt v. Crucible Steel Co., supra.

This rule has been qualified by the amendatory act of 1910. By that enactment the trustee, as representing the general creditors, is given all the rights and priorities which by the state law would be accorded to a creditor holding a lien, by legal or equitable proceedings, on the property, the proceeds of which are to be distributed. It follows that the question to be here decided is: Would a creditor of the bankrupt, who had levied execution upon the Hoister Calvin, have acquired rights therein superior to that of the bank as the holder of an unrecorded mortgage thereon? The bank says that by the law of Maryland the mortgagee under an unrecorded mortgage has a lien upon the mortgaged property which is superior to that of creditors whose claims originated before the making of the mortgage. It admits that subsequent creditors or purchasers without notice are not affected by the mortgage. It asserts that, in determining whether a creditor is or is not bound by the mortgage, it is immaterial whether he has recovered a judgment or levied execution or not, or whether, if he has obtained a judgment, it was recovered before or after the making of the mortgage; the only important inquiry being as to whether the debt itself was created before or after the mortgage was made.

The trustee admits that such is the law with reference to real estate and to mortgages upon it. The process by which the courts have reached this conclusion is simple. The owner of property has a right, if he sees fit, to mortgage it, provided he does so in good faith and for a valuable consideration. By mortgaging it he gives to the mortgagee a lien better than that of any of his other creditors. Under ordinary circumstances they would gain nothing by the recording of the mortgage, nor do they lose anything by its being withheld from record. Until they secure a lien upon the property it is always in the power of their debtor to use it to pay, or to secure the payment of, other claims due by him. It is true that giving such security may amount to a preference under the Bankrupt Act. If it does, then the question of when the mortgage was recorded becomes material in determining within what time a petition in bankruptcy based upon the giving of it must be filed. No such question is raised in this case.

In short, the law of Maryland is that, as previously existing creditors are not hurt by the withholding of a mortgage from record, the fact that it is not recorded gives them no other or better rights than they would have had, had it been recorded. Carson v. Phelps, 40 Md. 73; Dyson v. Simmons, 48 Md. 207. This rule has been applied by the Court of Appeals of Maryland to mortgages of personal property. Ober v. Keating, 77 Md. 100, 26 Atl. 501; Textor v. Orr, 86 Md. 392, 38 Atl. 939.

In each of the last above recited cases, it is true that the contest was between the holder of an unrecorded mortgage and an assignee for the benefit of creditors, none of whom had secured judgments or levied execution upon the property in controversy. The trustee contends that the subsequent case of Pleasanton v. Johnson, 91 Md. 673, 47 Atl. 1025, decided that an execution creditor has rights superior to those of an unrecorded mortgagee, and that it is immaterial whether his judgment was recovered upon a claim which was in date senior or junior to that of the mortgagee. In the case cited a resident of Delaware owned personal property actually within the state of Maryland. He attempted to mortgage it to another resident of Delaware. The mortgagee did not make an affidavit that the consideration was true and bona fide, as required by the law of Maryland. Certain creditors of the mortgagor had the property levied upon under nonresident attachments. The Court of Appeals held that these attachments took precedence over the mortgage. The court said that the Maryland requirement that there should be an affidavit that the consideration was true and bona fide as set forth in the mortgage was "a wise and salutary one, for there have been instances where the parties might not have been influenced by motives of honesty and fair dealing, but were deterred by fear of the penalties imposed for perjury from making mortgages and bills of sale for feigned considerations."

The Code of Maryland provides, with reference to mortgages of both real and personal property, that they shall not be valid without such affidavit, except as between the parties thereto. Code of Public General Laws of Maryland, 1904, art. 21, §§ 30, 50. The public policy underlying the requirement of an affidavit to the consideration is somewhat different from that which has inspired the registry acts. Denton v. Griffith, 17 Md. 301; Phillips v. Pearson, 27 Md. 242. It may be that the courts of Maryland, when the question shall come squarely before them, may hold that other and more serious consequences would follow from the absence of an affidavit than they have held will result from a mere failure to record a mortgage or deed of trust, or they may not. It is not necessary to consider that question in this case.

. The mortgage held by the bank had attached to it the affidavit of consideration required by the Maryland law. If it be assumed that the rights of the holder of an unrecorded mortgage on personal property are no better than are those of a mortgagee of such property to whose mortgage no affidavit of consideration is attached, does Pleas-

anton v. Johnson, rightly understood, overrule Textor v. Orr? The opinion in Pleasanton v. Johnson was written by the present learned and distinguished Chief Judge of the state. If he had intended to question the authority of Textor v. Orr, or even if he thought it necessary to distinguish one case from the other, he would have said so. When the original record in Pleasanton v. Johnson is examined, it will be found that the decision in that case is in perfect harmony with Textor v. Orr and with the other Maryland cases dealing with unrecorded mortgages upon real or personal property. The debts which in Pleasanton v. Johnson were held superior in right to the claims of the mortgagee were contracted after the date of the mortgage. That this was in the mind of the court is strongly implied from that sentence in the opinion which says:

"It would therefore not only be repugnant to the policy of this state, but contrary to the very letter of the statute, if this mortgage be upheld and declared superior to the attachments issued by parties who are not shown by the record to have had any notice of the existence of the mortgage when the debts due them were incurred."

It follows that under the law of Maryland, as declared by its highest court, a creditor whose debt had been contracted prior to the making of the mortgage to the bank would have been postponed to the bank's claims so far as the mortgaged property was concerned, although he had, after the making of the mortgage, reduced his claim to judgment and had levied execution on the mortgaged property.

The order of the referee, disallowing the claim of the bank to priority upon the fund over the general creditors of the bankrupt, irrespective of whether their claims originated before or after the mortgage, must therefore be reversed.

If there be no creditors whose debts grow out of contracts made since the date of the mortgage, the bank will take the entire balance of the fund after the payment thereout of its proportionate share of the expenses, costs, and commissions of making the sale of the vessel property. If there are subsequent creditors, the fund will be distributed between them and the bank in accordance with the principles laid down in Dyson v. Simmons, supra; that is to say, the amount to be received by the creditors whose claims are subsequent in date to that of the mortgage will be the same as if the bank was a simple contract creditor, and all the creditors whose claims arose before the making of the mortgage to the bank were entitled to participate in the fund, and the balance goes to the bank.

In other words, if it be assumed that the balance of the fund will amount to $1,400, and there are $2,000 of claims against the bankrupt which arose subsequent to the date of the mortgage, and $5,000 which arose before the date of the mortgage, and the claim of the bank, over and above the amount received by it from the sale of the other vessel property, is $7,000 there will be $14,000 of claims which, if there were no mortgage, would be entitled to share in the distribution of the $1,400. In that event each creditor would receive 10 per cent. of his claim. The creditors subsequent to the date of the mortgage

would therefore be entitled to $200 of the $1,400, and the bank would take the remaining $1,200. The principle upon which this rule of distribution is upheld is stated by the Court of Appeals of Maryland in the case of Dyson v. Simmons, supra, as follows:

"The claim of no creditor subsequent to the date of the mortgage, whether it be in the form of a judgment or otherwise, is in any manner affected by such * * * mode of distribution. He gets exactly what he would have received if the mortgage had not been executed, and he in justice can claim no more. The fact that the prior debts, and the judgments that may have been rendered thereon, are overreached by the mortgage, can certainly furnish neither equity nor reason for placing the creditors subsequent to the mortgage in a more advantageous position, with respect to the fund, than if the mortgage had not been made."

The order of the referee will therefore be reversed, at the cost of the trustee, and the referee will distribute the fund in accordance with the conclusions herein stated.