DE LONG et al. v. MECHANICS & METALS NAT. BANK.   (No. 7398.)

(Supreme Court, Appellate Division, First Department.   June 18, 1915.)

1. BANKRUPTCY ⊜⇒154, 314—DEBTS DUE BANKRUPT—SET-OFF.

Under Federal Bankruptcy Act, July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1913, §§ 9585–9656), unmatured as well as matured claims are provable against the estate and may be set off by a bank against the amount of the bankrupt's deposits therein.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 451–455, 469–473, 478, 483–487, 489, 490; Dec. Dig. ⊜⇒154, 314.]

2. BANKRUPTCY ⊜⇒144—DEBTS DUE BANKRUPT—SET-OFF.

The receiver of an insolvent corporation appointed by the state court to conserve the property acquires no specific lien on the property within Bankruptcy Act, § 67c (U. S. Comp. St. 1913, § 9651), providing that a lien created by any suit shall be dissolved on the adjudication of the defendant therein to be a bankrupt, or if the dissolution thereof would militate against the best interests of the estate it shall not be dissolved, but the trustee in bankruptcy shall be subrogated thereto, and section 67f, providing that all liens obtained through legal proceedings against an insolvent person shall be dissolved unless the court order that it be preserved for the benefit of the estate, so as to prevent a bank which held unmatured notes against the corporation at the time the receiver was appointed from setting off the amount of such notes against the deposits of the corporation in the bank after the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 237; Dec. Dig. ⊜⇒144.]

Appeal from Special Term, New York County.

Action by William De Long and others, as trustees in bankruptcy, against the Mechanics & Metals National Bank. From an order overruling a demurrer to the answer, the plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Francis D. Pollak, of New York City, for appellants.

John A. Garver, of New York City, for respondent.

SCOTT, J.   The plaintiffs appeal from an order overruling a demurrer to the second separate defense contained in the answer. The plaintiffs are the trustees in bankruptcy of the New York Commercial Company, a Virginia corporation. They sue to recover a balance of $46,062.23, which said corporation had on deposit with defendant at the time of the bankruptcy. The sum represents a part of the proceeds of five notes for $10,000 each, which had been discounted by defendant in December, 1912, and which are now held· by the defendant, and all of which, save one, had matured when the Commercial. Company became bankrupt. By the defense demurred to the defendant seeks to offset the amount of these notes against its indebtedness upon the deposit account.

[1] It is conceded that under the Federal Bankruptcy Act unmatured, as well as matured, claims are provable against a bankrupt's estate, and may be offset by a bank in a case like the present. Frank v. Mercantile National Bank, 182 N. Y. 264, 74 N. E. 841, 108 Am. St. Rep. 805.

[2] The plaintiffs claim, however, that this rule is not applicable to the present case because of an action which had been instituted against the Commercial Company before it became a bankrupt. On February 15, 1913, a creditor's action was commenced against the Commercial Company in Virginia by a general creditor for the benefit of himself and other creditors similarly situated. In this action a receiver of the assets of the Commercial Company was appointed in Virginia and an ancillary receiver in this state. The receiver made a demand on defendant for the amount due to the Commercial Company, but brought no suit, and on April 12, 1913, less than four months after the appointment of the receiver, the Commercial Company went into bankruptcy, and plaintiffs were appointed trustees. None of the notes now sought to be set off had matured when the receiver was appointed in the action in Virginia, and the plaintiffs' claim is that by the institution of the action in Virginia and the appointment of a receiver therein the creditors represented by such receiver acquired a specific lien upon all of the bankrupt's property which passed to the trustees in bankruptcy under sections 67c and 67f of the Bankruptcy Act, and that with that lien there also passed to the trustees in bankruptcy the immunity against the offset of unmatured claims, which, as it is said, is provided by the law of this state (see Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456. The sections of the Bankruptcy Act thus relied upon read as follows:

"Sec. 67c. A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act; or if the dissolution of such lien would militate against the best interests of the estate of'such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened."

"67f. That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

In our opinion these sections have no applicability to the case presented on this appeal. The receiver took no title to the assets of the Commercial Company. His sole function was to collect them and to hold them subject to the disposition of the court by which he was appointed. Therefore he had no title to convey to the trustees in bankruptcy, and the conveyance which he made to them under the order of the bankruptcy court carried nothing and added nothing to the title which the trustees already had by virtue of their appointment. The provision in the Bankruptcy Act for transferring a lien to the trustees in bankruptcy for the benefit of the estate was intended to meet a case where such a transfer would perfect the trustees' title. In the present case nothing of the sort was necessary because the trustees already had all the title, and any claim the creditors might have acquired by the institution of their suit was in no sense antagonistic to the title of the trustees.

Furthermore, while it is sometimes loosely said that the institution of a general creditors' suit and the appointment of a receiver therein creates a lien upon the debtor's estate, this, as we consider, is not strictly accurate. Certainly no specific lien is established thereby such as is referred to in the sections of the Bankruptcy Act above quoted.

The order appealed from must be affirmed, with $10 costs and disbursements, with leave to plaintiffs to withdraw the demurrer and reply to the counterclaim contained in the answer, upon payment of costs in this court and in the court below. Order filed.

INGRAHAM, P. J., and CLARKE and DOWLING, JJ., concur.

HOTCHKISS, J. I concur in the affirmance of the order. The sole question, as I view it, is whether the mutuality of obligation between the insolvent New York Commercial Company was broken by the commencement of the creditors' action and the appointment of the ancillary receiver, and continued to be broken by any rights remaining in such receiver after the adjudication in bankruptcy and the appointment of the plaintiffs as trustees therein.

In his argument counsel for the appellants directs our attention to the different classes of creditors' actions, but he goes no further, and fails to discriminate between the different classes. His subsequent argument is apparently based upon the theory that after bill filed all creditors' actions are alike, so far at least as the effect of filing and receivership are concerned. Herein lies what I conceive to be the vice of the appellants' case. Actions by judgment creditors or others having judicial process, liens, or preferential debts, which are brought in aid of such process or to set aside transfers by which the execution of process or the attaching of the lien or preference pertaining to a particular debt is embarrassed, stand upon an entirely different footing from actions, whether by judgment or simple creditors, brought for the purpose of conserving, marshaling, and distributing the assets of an insolvent corporation, in one of which latter class of actions it was that the receiver of the New York Commercial Company was appointed. In the one case equity assumes jurisdiction to set aside as fraudulent or

void claims the existence of which prevent the enforcement of process or of rights against specific property, and which but for the existence of the illegal obstruction could be made a lien thereon or preferred in some way with respect thereto.   In the other, the bill is in the nature of an action quia timet, and is based, not on the theory of specific lien or right, but on the principle that in such circumstances equality is equity, and that all creditors are entitled to share ratably according to their respective ranks, in the assets of the insolvent company, which result cannot be obtained unless a court of equity intervenes, and usually with its adjuncts of receiver and injunction.   These general distinctions must be borne in mind when we read in decisions that the filing of a bill in a creditor's action works an "equitable levy" and creates "a lien in equity on the judgment debtor's equitable assets," for they permeate the purposes of jurisdiction and characterize the issuable matters incident to the several types incident to the several types of creditors' actions.   Jurisdiction in a creditors' action, brought to conserve and distribute the assets of an insolvent corporation, having been assumed, the general rule is that all equities are to be determined as of the date of the filing of the bill, and it is to preserve and enforce the full measure of its control over the res necessary to preserve the equities of all the parties in interest that the court resorts to receivership or injunction.   A receiver in such a case is clothed with no estate in the property, but is a mere custodian of it for the court.   His appointment is provisional upon the ultimate decree. He represents, not alone the complainant and the defendant, but all parties who may establish an interest.   His right to possession is only such as the court gives to him, and he must get from the court whatever authority he has.   His right to sue is not recognized outside of the jurisdiction of his appointment.   Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Quincy, etc., R. R. Co. v. Humphreys, 145 U. S. 82, 98, 12 Sup. Ct. 787, 36 L. Ed. 632.   It has been said that it was because of the limitations shown to attach to such receivers by the decision in Booth v. Clark that the practice arose to secure the appointment of ancillary receivers, as was done in the instant case.   Great Western Mining Co. v. Harris, 198 U. S. 561, 577, 25 Sup. Ct. 770, 49 L. Ed. 1163.   What rights, if any, might have arisen had the ancillary receiver of the New York Commercial Company, at some time between the date of his appointment and the date when the corporation was adjudicated a bankrupt, secured some specific lien upon or interest in the debt owing from the bank to the corporation, is a question which is not before us.   Suffice it to say that he secured none.   Nor did the court appointing him have anything more than jurisdiction to proceed in the cause and enforce such proper decrees as it might make in the premises, and it made none with respect to the debt owing by the bank.   When the corporation was adjudged bankrupt, the bankruptcy court drew to itself plenary jurisdiction over the whole subject-matter, which jurisdiction the state court was in duty bound to recognize as paramount.   To the jurisdiction thus intervening attached the power to adjudicate all rights, liens, and claims of every description according to the law as administered in that jurisdiction, and having due regard for all rights which had become vested by virtue of state laws.   See First Nat. Bank of Pittsburgh v.

Guaranty Title & Trust Co., 178 Fed. 187, 189, 190, 101 C. C. A. 507. Specific liens and claims, whether of legal or equitable nature, and as well all other claims whatsoever, were to be respected, enforced, or disposed of as provided for by that law. But general equities, resting upon no other foundation than the filing of the bill in the state court and the power of that court to establish and enforce the rights and equities incident to its jurisdiction of the cause, necessarily fell when the jurisdiction of the state court was supplanted by the federal court. To argue otherwise would result in holding that in the bankruptcy proceedings all equities must be determined as of the filing of the bill in the state court, and according to the rules and practice of that court—an impossible situation. It is true that in some situations and for some purposes the bankruptcy law is held to be cumulative to the state law (see Miller v. New Orleans Acid & Fertilizer Co., 211 U. S. 496, 506, 29 Sup. Ct. 176, 53 L. Ed. 300), but the conclusion I draw from the principles of the Miller Case is that general equities are "exclusively cognizable in the bankruptcy court" (211 U. S. 507), 29 Sup. Ct. 181, 53 L. Ed. 300. So far as they have been cited to us, and so far as I have been able to find, in every case where under section 67f a lien, legal or equitable, has been recognized, it has been of some specific nature, conferring a special right upon the creditor or upon some trustee, either in behalf of one or more particular creditors, or in behalf of all creditors, and which arose because of some particular interest in the res or preferential claim with respect thereto. The inchoate equities of general creditors in the assets of the insolvent company arising from the mere filing of the bill and the appointment of the ancillary receiver fell when the jurisdiction of the state court was abated, and no lien, equity, or interest arising, with respect to such creditors and by force of the filing only, survived, at least none which was susceptible of being conveyed by the receiver to the trustees in bankruptcy, the appellants herein.