In re CAHILL.

(District Court, N. D. Ohio, W. D. July 22, 1912.)

No. 1,551.

1. BANKRUPTCY (§ 161*) — PREFERENCES BY A BANKRUPT — TIME — RECORD OF DEED.

Deeds placed in the possession of the grantee with the understanding that the grantor should pay his indebtedness to the grantee and have the deeds returned to him were not delivered so as to become effective until they were recorded, for the purpose of determining whether the transaction amounted to a preference to the grantee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

2. BANKRUPTCY (§ 311*)—UNSECURED CLAIMS—PROOF—PARTICIPATION IN ESTATE.

Where claims of a bank's assignee against the bankrupt's estate were filed as unsecured within 60 days after an order declaring that certain deeds executed by the bankrupt to the bank to secure the claims were preferences had been passed, the fact that the claimant attempted unsuccessfully to secure a preference and took advantage of the security was no answer to his right to prove the claims as unsecured, though more than a year had passed from the bankruptcy adjudication, as provided by Bankr. Act July 1, 1898, c. 541, § 57n, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

In Bankruptcy. In the matter of bankruptcy proceedings of R. W. Cahill, bankrupt. Objection of certain creditors to the allowance of the claim of the Citizens' State Banking Company. Overruled.

J. R. Linthicum, of Napoleon, Ohio, for trustee.

Donovan & Warden, of Napoleon, Ohio, for bankrupt.

KILLITS, District Judge. The question before the court in this case is the aftermath of the decision reported in 189 Fed. 138. Acting upon the order made in that case, the assignee of the Citizens' State Banking Company of Napoleon surrendered the real estate of the bankrupt which the court held had been conveyed to it by way of preference. Opposition is made by other creditors to the allowance of the bank's claim as creditor upon the notes discussed in that case, to secure which it attempted to hold the real estate, and the matter is before the court on exceptions both by Donovan, assignee of the bank, and by creditors of the estate, to the finding of the referee making a partial allowance of the bank's claim.

[1] As will be seen by the recitation of facts in the opinion referred to and the court's reasoning thereon, the deeds were held to effect no result whatever until they were filed for record. It was the opinion of the court, under the peculiar circumstances of the case, that delivery of the deeds to the bank was not complete until the cashier filed them with the county recorder, because up to that instant they were papers subject to the recall of the grantor, and it was on that theory, in part at least, that the court held the avoidable preference to be timed as of the date of filing. During the five years intervening between the making of the deeds and the filing for record, they were ineffective for any purpose, because the transaction of which they were part was incomplete. Hence it is that those who dealt with the bankrupt, Cahill, during that period, in faith that he was the owner of the lands described in these deeds, were not misled, for he was the owner in fact, and, as to them, the holder of an absolute title. The preferences as of the date of the filing of the deeds were also in favor of a debt valid in its creation and created long antecedent thereto. No one is disputing but that in fact the bank's claims are valid debts of the bankrupt.

It is the position of counsel for the assignee that these claims, filed within 60 days after the order entered in Ragan v. Donovan (D. C.) 189 Fed. 138, were "adjudicated" as unsecured by that case and come within the authority of Powell v. Leavitt, 150 Fed. 89, 80 C. C. A. 43; In re Lange (D. C.) 170 Fed. 114; In re Clark (D. C.) 176 Fed. 955; Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332; Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790; and that there was a right to file them for proving after that decision, although more than one year had passed from the adjudication in bankruptcy, under the provisions of section 57n of the Bankrupt act.

[2] On behalf of objectors it is principally urged that these claims cannot be received upon the theory that they are tainted with bad faith on the part of the bank growing out of its attempt to take these preferences, and reliance is had upon the case of In re Hurst (D. C.) 188 Fed. 707.

In the judgment of the court this case does not sustain the objection. In the Hurst Case the court holds that the debt from Hurst to the Tearney estate, which was represented by the consideration for the deeds avoided by the trustee, was tainted with the fraud involved in the making of the deed. The making of the deed and the creation of the debt were contemporaneous with the fraud. On page 711 of 188 Fed. the court says:

"Will Tearney be allowed to prove and secure pro rata payment of the $14,000 which he paid for the properties? I think not, for this debt, if it be considered such, arose from fraudulent intent and designs, and courts will leave parties guilty of fraud without remedy. But will a court of bankruptcy go farther, and punish the fraudulent grantee by refusing him the right to participate, with an honest and undisputed debt in the funds collected by the trustee for the equal benefit of all honest debts of the bankrupt, properly proven? I think not."

So, notwithstanding the finding of the court that Hurst and Tearney were engaged in a fraud upon the creditors of the bankrupt, out of which accrued the existence of the $14,000 debt and the execution of the deed, the Tearney estate was allowed to prorate equally with other creditors on another claim held by it in which there was no taint of fraud. This case seems to have been affected somewhat by the laws of the state of West Virginia. Subsequently, Judge Dayton, who decided it, had a case very similar to the case at bar (In re Elletson Co. [D. C.] 174 Fed. 859), in which he avoided a conveyance to the Ritchie County Bank as a preference under circumstances very similar to those in the case of Ragan v. Donovan. Following Judge Dayton's decision in the case of In re Hurst, the referee in the Elletson bankruptcy proceedings appears to have rejected the claim of the Ritchie County Bank when it sought to prove as unsecured its debt theretofore attempted to be secured by the voided conveyance. This action of the referee gave rise to the case of In re Elletson Co. (D. C.) 193 Fed. 84, on page 87, in which the decree of the referee rejecting the claim was reversed and the claim ordered to take its standing with other unsecured debts; the court saying:

"In considering this question, a distinction is to be recognized, it seems to me, between a fraudulent and void debt and a fraudulent and void conveyance executed to secure a valid debt. Generally speaking, in the first instance no remedy is afforded the creditor to collect the debt. In the second instance, under the laws of this state, the valid debt, by reason of the taking of a fraudulent conveyance to secure it, will not be denied payment, but will be postponed in payment to at least all the debts existing at the time of such fraudulent conveyance. *The Bankruptcy Act recognizes no principle whereby a valid debt may be postponed in payment of another, both being unsecured.*"

As we have seen, the notes presented by the assignee represent valid debts of the bankrupt to the Citizens' Bank. By no process known to the administration of the bankruptcy law, whatever may be the holdings in different state jurisdictions, were these claims affected by the transactions of the deeds. No creditor has lost anything. Every one has the same right of participation in the estate of the bankrupt that he would have had had these deeds never been made.

We are unable to see any reason why the authorities cited for the

claimant do not control the court's judgment in this case, or any reason why the assignee's claim upon these notes should not be allowed as valid claims against the bankrupt's estate, to participate in the distribution on parity with all other unsecured claims.

The order of the referee is reversed on the objection of the claimant, and an order will be entered directing that these claims be allowed.