In re LOUIS J. BERGDOLL MOTOR CO.

(District Court, E. D. Pennsylvania. February 17, 1916.)

No. 4742.

1. BANKRUPTCY ⊜⟞311—RIGHT TO PROVE CLAIM—SURRENDER OF PREFERENCE.

Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1913, § 9644), provides that a transfer by an insolvent within four months of the filing of the petition in bankruptcy, operating as a preference to a person having reasonable cause to believe that its enforcement would be a preference, shall be voidable by the trustee. Section 67e (section 9651) provides that all conveyances, transfers, etc., by a person adjudged a bankrupt within four months prior to the filing of the petition with intent and purpose to hinder or defraud creditors, shall be void as against creditors, except as to bona fide purchasers, and that all such property shall remain a part of the assets of the bankrupt and pass to the trustee. Section 57g (section 9641) provides that the claims of creditors who have received preferences voidable under section 60b, or to whom conveyances or transfers void or voidable under section 67e have been made or given, shall not be allowed unless such creditors shall surrender such preferences or transfers. Held, that a preferred creditor was entitled to prove his claim, though there had been no surrender of his preference beyond what was involved in the payment of a final judgment secured against him in a proceeding by the trustee to avoid the preference, and though it was claimed that he was guilty of fraud in procuring the preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. ⊜⟞311.]

2. BANKRUPTCY ⊜⟞328—TIME FOR PROVING CLAIMS—"LIQUIDATED BY LITIGATION."

Where a creditor of a bankrupt receives a preference which is recovered by the trustee, his claim is one "liquidated by litigation," within Bankr. Act, § 57n (section 9641), providing that claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication, or if they are liquidated by litigation, and the final judgment therein is rendered within 30 days before or after the expiration of such time, then within 60 days after the rendition of such judgment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⊜⟞328.

For other definitions, see Words and Phrases, First and Second Series, Liquidated by Litigation.]

3. BANKRUPTCY ⊜⟞337—PROOF OF CLAIMS ASSIGNED AFTER PROOF AND ALLOWANCE.

The assignee of a claim proved and allowed against a bankrupt estate, and upon which dividends have been paid, need not and cannot make proof of the same claim in his own name as the then owner and assignee of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⊜⟞337.]

In Bankruptcy. In the matter of the Louis J. Bergdoll Motor Company, bankrupt. On petition to review orders made by the referee respecting claims of Erwin R. Bergdoll. Orders vacated, with directions.

See, also, 225 Fed. 87; 229 Fed. 262.

Henry J. Scott, of Philadelphia, Pa., for claimant.

J. Frederick Jenkinson and Frank A. Harrigan, both of Philadelphia, Pa., for trustee.

DICKINSON, District Judge. Whatever conclusion might be reached in this case if the questions involved had not already been passed upon, we feel bound to find these propositions to have been settled beyond our authority to disturb them.

[1] 1. A preferred creditor may prove his claim under section 57g of the Bankruptcy Act, notwithstanding there has been no surrender of his preference by him beyond what is involved in the payment of a final judgment secured against him in a proceeding instituted by the trustee to avoid the preference.

[2] 2. Such creditor is not barred by the one-year statute of limitation, but his claim is within the protection of the proviso in section 57n as a claim "liquidated by litigation."

[3] 3. The assignee of a claim proven and allowed, and upon which dividends have been paid, need not and cannot make proof of the same claim in his own name as the then owner and assignee of such claim.

The acts of which this claimant has been guilty excite the feeling, difficult to suppress, that he should not be permitted to share in this estate. Such exclusion, however, must be based upon some intelligible legal or equitable principle. No such excluding principle can be formulated which is not denied by the rulings in adjudged cases, some of which are authoritative and others of which show a current of judicial opinion which cannot be opposed. Boiled down, the argument against the claimant, and the answer to it, is this: The claimant merits punishment. The courts, however, cannot inflict it, because the law has not imposed it. The claimant fraudulently received payment, which is good as to him, although voidable by the trustee, and he cannot escape the consequences of payment by the proof of his own fraud. The Bankruptcy Act specifically provides that he may notwithstanding prove his claim. He has in attempted furtherance of his fraud exposed the estate to delay and expense by prolonged and unwarranted litigation, and should not be permitted to profit by an adverse ruling. It is his legal right to submit his cause to the ruling of the courts. It thus becomes clear that the whole question is whether he is within the condition imposed by section 57g and the saving clause of 57n. The courts have authoritatively ruled that he is, thus disposing of the case.

The very earnest argument which has been addressed to us on behalf of the trustee nevertheless supplies the excuse for a discussion of the legal merits of the case at what is perhaps undue length. There are certain features of this case which may, if permitted, so blur the vision and obstruct the view of the case as to prevent it from being seen as it really is. This claimant has acted either in open and utter disregard of all laws or in crass ignorance of hornbook principles of business as well as law. The orders made by the referee affect two claims presented by Edwin R. Bergdoll against this bankrupt estate. One of the claims we will call the claim of $32,000. The claimant had loaned moneys to the bankrupt, for which he held notes. On the eve of its bankruptcy, and because he knew the company was hopelessly insolvent, he secured what was in form a preferential payment

of the debt due him. In actual fact, what he did was to take posses-
sion of the property of the company. His plan had the merit of sim-
plicity to the limit of crudeness. He was the owner of all the capital
stock of the company. Thus controlling its actions, he reorganized
the management by placing it in the hands of creatures of his own.

There was a sister corporation, known as the Bergdoll Machine
Company which he also controlled. Late one Saturday after business
hours, and on the Sunday following, when no one was about to ob-
serve what was going on, he removed certain manufactured products,
finished and unfinished, belonging to the Motor Company, and trans-
ferred them to the Machine Company. He then had the latter com-
pany give its certified check to the Motor Company for a sum ex-
actly equal to the amount of the debt due him. This was pretended
to be in payment of the product thus "purchased." He then had a
compliant official of the Motor Company give its check in "payment"
of the debt due him. He, of course, arranged that the two checks
should in form go simultaneously through the bank. There was doubt-
less the added feature that a like sum passed from the Machine Com-
pany to him. A few days later a petition in bankruptcy was filed and
in due course there was an adjudication, followed by the election of
a trustee. The trustee, of course, promptly moved to right the wrong
which had been thus done to creditors, and in this he was, likewise
of course, successful. He elected to treat the transaction as a sale
of the property of the bankrupt, which he affirmed, and the "payment"
a preferential payment to the creditor, which was voidable by the trus-
tee. The litigation was protracted by the creditor to the end, finally
reaching the Supreme Court of the United States. The judgment of
the District Court was affirmed by the Circuit Court of Appeals and
its judgment was summarily affirmed by the Supreme Court on the
ground that the assignments of error were frivolous and appellate
proceedings taken for delay. The judgment was a money judgment
for the recovery by the trustee of the preferential payment. The
claimant then paid the judgment and sought to make proof of his
original claim of debt against the bankrupt estate. His right to do
this was resisted by the trustee, and the claim disallowed by the ref-
eree. The grounds of disallowance will later appear.

Bringing the claim out of the dark cloud in which the claimant
himself has enveloped it, and looking at the transaction in the clear
light of the legal rights of the parties, we have this view of it. The
original status of the claimant as a creditor is not attacked, nor the
debt of the bankrupt denied. The Bankruptcy Law provides (inter
alia) for the following cases: One is that of fraudulent transfers of
the property of the bankrupt. Such transfers are void as against
creditors unless the property shall have passed to bona fide purchas-
ers. See section 67e. Trustees may recover the property through ap-
propriate proceedings. See sections 67e and 70e (Comp. St. 1913, §
9654). The other is unlawful preferences given to creditors. See
section 60b. Such preferences are not in terms declared void, but are
"voidable by the trustee." The law, however, contemplates that a
fraudulent grantee under section 67e may be a creditor as well as the
payee under section 60b. See section 57g.

Although the creditors concerned are thus put in the same class, it may be helpful to us to inquire at this point with which of these classes we are dealing. Under the facts of this case the trustee might have pursued the property of the bankrupt which was transferred to the Machine Company. The question of the good faith of the transfer and of the purchaser would then have been in issue, and the rights of the purchaser determined under section 67e. It was the alternative right of the trustee to have affirmed this sale and go after the money paid to the claimant as an unlawful preference. The rights of the parties would then be determined under section 60b. He took the latter course, and we are, in consequence, done with section 67e, except in so far as payment involves (as it does) the idea of a transfer.

The first status of the claimant having been found to be that of a bona fide creditor, let us pause here to find his second status as a preferred creditor. In legal terminology the words "fraud," "mala fide," and like terms, may have a different meaning from that conveyed when they are used in their ethical sense. The idea of this difference in meaning is sometimes conveyed by some qualifying word or phrase. Hence we have the expressions "legal fraud" and "fraud in law." No one can be adjudged guilty of fraud merely because he has obtained payment of a just debt, even from a failing creditor. Indeed, insistence upon payment is commonly prompted by a suspicion, if not actual knowledge, of insolvency. In the absence of some such provision of the law as is found in the bankruptcy statute, there would be nothing unlawful in a creditor securing payment of his debt. It will be noticed that the Bankruptcy Law does not condemn it. Under certain circumstances the trustee may recover it back, but only under such circumstances. If bankruptcy does not intervene or if the creditor did not "have reasonable cause to believe," etc., the payment remains a lawful payment. No creditor can know with certainty that his debtor will be adjudged a bankrupt. He may therefore accept payment of his debt (if that is all he does) and retain the money subject to the possible claim of the trustee. When the trustee moves to recover the property as fraudulently transferred or the money paid as an unlawful preference we come to the third status of the creditor. It is to be observed that the fraudulent character of the transfer or the unlawfulness of the preferential payment has not yet been established. May the creditor assert, what is ordinarily his right, to "litigate" the question between himself and the trustee, and have it determined? We see no escape from an affirmative answer to that question. It is, however, involved to some extent in the point next discussed.

We are thus brought after this long prelude to the real question here involved. Much might be said (has indeed been said in the arguments addressed to us) of the effect of the fraud of the creditor upon what would otherwise be his right. All such discussion is, however, beside the mark, for the reason that the Bankruptcy Law defines with precision what his rights are. They are defined in section 57g. It cannot escape attention that the law, as already observed, makes no distinction between fraudulent transfers and preferential payments

to the creditor. He may, in either event and none the less, prove his claim at the cost of a "surrender" of what he has received. The trustee seeks to read into this clause the idea of a voluntary "surrender," as if he were permitted to prove his claim as a reward for anticipating an adverse ruling and saving the estate the expense of litigation. It will be observed that the act makes no such distinction. It does not in terms exclude compulsory, or limit its benefits to voluntary, surrenders. The right of the creditor to prove his claim is made to turn simply upon the fact of surrender. We are again saved the duty of construing the act, because it has been construed for us. It applies, or at least may apply, to cases in which the property has been given up after a ruling adverse to the right of the creditor to hold what he has received. Keppel v. Tiffin Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790.

This establishes a status for the creditor that he may still be a creditor, notwithstanding he was a party to a fraudulent transfer of property or an unlawful preferential payment, and that he has litigated to final judgment his right to retain what he had received. What, then, is his final status? Under section 57n every creditor loses his right to prove his claim, if not made within one year after adjudication of bankruptcy. The year limit is extended only in favor of claims which have been "liquidated by litigation." Is this such a claim? We are not at liberty to follow the argument (however plausible) that this provision does not extend to claims under section 57g in the face of the long line of rulings that it does embrace them. These rulings make discussion fruitless. Lange Co. (D. C.) 170 Fed. 114, 22 Am. Bankr. Rep. 414; Evans Furniture Co. (D. C.) 171 Fed. 673, 22 Am. Bankr. Rep. 623.

The referee was thus justified in his ruling that the claim was not barred by the one year limitation. The referee held, however, that the claimant had made no "surrender," such as to entitle him to prove his claim under section 57g. In reaching this conclusion, he distinguishes the case at bar from that of Keppel v. Tiffin on the ground that in the latter case the transaction was in good faith, while he finds the claimant in this case to have been guilty of fraud. In such cases of guilt we are prone (as already indicated) to lose sight of the legal questions involved and see only the justice of a condemnation of the fraud. The question of the legal rights of the claimant must, however, be faced. Before the Keppel Case was decided there were two views, either of which was open to be taken. The one is that presented by the majority, and the other by the minority opinion. The adjudication in bankruptcy in the Keppel Case was October 12, 1900. This, it will be observed, was after the act of 1898, but before the amendments of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797), and 1906 (Act June 15, 1906, c. 3333, 34 Stat. 267). Section 57g, as it then stood, referred only to creditors who had received preferences. Section 57n was then as it now is. In respect to the feature under discussion, 60b, 67e, and 70e were likewise the same as now. The majority view is embraced in these propositions:

(1) The main purpose of the Bankruptcy Act in the features then under consideration was to assure equality of distribution of assets among creditors.

(2) To disallow a claim would be to impose a penalty upon the creditor.

(3) Such penalty could not be imposed by the courts merely because they thought the creditor deserved it, but only because the Bankruptcy Act prescribed it.

(4) A claim should not be disallowed because the creditor had appealed to the courts in defense of what he in good faith thought to be his rights.

(5) A creditor to whom has been given a mortgage, avoided under 60b and 67e, may, after final judgment, prove his claim under sections 57g and 57n; he having thus "surrendered" his preference.

The minority view is embraced in these propositions:

(1) A creditor holding a preference is put upon his right of election to surrender his preference and prove his claim, or be disqualified from proving it.

(2) A preference found to be unlawful by the final judgment of the court, which the creditor has resisted to the end, has not been surrendered within the meaning of section 57g.

The view of the majority is supported by the fact that Congress, in some of the earlier acts, imposed upon creditors the penalty of loss of the whole or a moiety of their claims by being parties to frauds under the act, and omitted these penal features from the act of 1898, and that by the act of 1903 the right to prove claims was expressly extended to those who were parties to fraudulent conveyances under section 67e. Some sanction to the opinion that the majority view is in accord with the policy of Congress is given by the further fact that Congress has not changed the law since the Keppel Case was decided. We see no escape from the conclusion that the Keppel Case rules the present, notwithstanding the view of the referee that it is to be distinguished on the ground of fraud. We do not understand the ruling to have been put on that ground. The bank in that case, it is true, was found to have acted in good faith. It is also true that the court expressed its opinion that to rule that 57g meant a voluntary surrender would be to punish a creditor who, in good faith, asked the court to decide upon his rights, if it turned out he had misjudged them.

This, it will be noticed, is just what such a ruling would do. This is a far cry, however, from holding that the section is to be construed in favor of a litigant who honestly, although mistakenly, believes in his claim of right, and is to be given the opposite meaning in the case of one who has a better knowledge of the law. No such distinction can be made by the courts without confounding the adage that every man is presumed to know the law. It will be further noticed that the dissenting opinion puts the dissent upon no such ground. It is planted upon the clear-cut propositions that the creditor is put upon his mettle and to show his faith in his claim of right by being given his election

to hold on or to surrender, and that he is not surrendering anything when he holds on to it until it is taken away from him by force.

It may be further noticed that, although the point was neither raised nor discussed, the case involved the proposition that the proof of claim was in time under section 57n.

The second question involved in this review is disposed of by its mere statement. Louis J. Bergdoll made proof of what we will call the $9,000 claim. It was allowed, and two dividends have been paid upon it. Erwin R. Bergdoll, averring himself to be the assignee of Louis J. Bergdoll, now seeks to prove the claim over again. It is manifest that this cannot be done, nor is its second proof necessary to secure whatever rights Erwin R. Bergdoll may have in this claim. The referee apparently has planted his disallowance of the claim on the ground that it belongs, not to Erwin R. Bergdoll, but to Louis J. Bergdoll. The bankrupt estate is in no wise concerned in such dispute, if there were one. The claim, having once been proven, is entitled to dividends. To whom the dividends are to be paid is a question to be disposed of in the "orders to pay" class, and not the "proof of claims" class. Moreover, it was stated at the argument that there was no controversy over the payment of dividends.

The petition for review is allowed, the orders of the referee are vacated, and the referee is directed to proceed in accordance with the views herein expressed.