## In re RAGAN. In re CHENEY. RAGAN v. FORBES.*

(Circuit Court of Appeals, First Circuit. December 22, 1924.)

No. 1752–1756.

**1. Bankruptcy ⬅⬆336—Secured creditors' objection to sale of bankrupt's assets because of its lien held not proof of claim within statute which could be amended.**

Objection to sale of bankrupt's assets by secured creditor on ground of lien on collateral, without making claim against estate, was not proof of claim required to be filed within year of adjudication under Bankruptcy Act, §§ 57a, 57b (Comp. St. § 9641), and there was therefore nothing which could be amended by substituting therefor formal claim for leave to participate as general creditor for excess of claim over value of securities.

**2. Bankruptcy ⬅⬆336—Granting leave to amend proof of claim discretionary, and refusal to permit amendment of insufficient claim five years after adjudication not abuse of discretion.**

Granting leave to amend proof of claim is discretionary, and refusal of amendment was not abuse of discretion where application was made more than five years after adjudication, and claim sought to be amended was not claim against estate, but was mere objection to sale of bankrupt's assets.

**3. Bankruptcy ⬅⬆328—Trustee's petition for sale of bankrupt's assets and objection thereto by secured creditor held not "litigation" within statute.**

Petition by bankrupt's trustee for leave to sell bankrupt's assets and objection to sale filed by secured creditor did not constitute "litigation" within Bankruptcy Act, § 57n (Comp. St. § 9641), in view of section 57f, so as to give secured creditor right to prove its claim at any time within 60 days after final action on petition, claim not being unliquidated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series. Litigation.]

Anderson, Circuit Judge, dissenting.

Appeal from and Petition for revision of Proceedings in the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

In the matter of Benjamin P. Cheney, bankrupt. On petition by Terrell M. Ragan, trustee of the American Ammonia Company, to revise an order of District Court approving the referee's order denying petitioner leave to amend proof of claim, and on appeal from order in favor of Allan Forbes, trustee. Petition to revise dismissed, and decree affirmed.

See, also, 300 F. 465.

Martin Witte, of Boston, Mass. (Benjamin A. Levy, of Boston, Mass., on the brief), for petitioner, appellant.

William D. Turner, of Boston, Mass., for respondent, appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

*Certiorari denied 45 S. Ct. 354, 69 L. Ed. —.

JOHNSON, Circuit Judge. [1] Benjamin P. Cheney was adjudicated a bankrupt on January 14, 1918.

In the schedules filed by him the American Ammonia Company appeared as a creditor in the amount of $136,000, holding as security 14,800 shares of its capital stock.

Upon September 17, 1918, the trustee filed a petition for leave to sell at public or private sale all of the assets of the estate of the bankrupt. On September 26, 1918, the American Ammonia Company filed objections to the sale, "for the reason that certain shares of its capital stock are among said assets, and that it has a lien on said shares amounting to upwards of $130,000."

The referee, who has since died, ordered that the trustee should have leave to sell at public or private sale any and all assets of the bankrupt estate, except "the interests of the bankrupt in any stock of the American Ammonia Company, any interests he may have in the estate of his late father, Benjamin P. Cheney, Sr., and any interests he may have in the stock or bonds of the Gila Copper Sulphide Company."

On December 4, 1923, the petitioner, as trustee of the American Ammonia Company, which had been adjudicated a bankrupt, filed a petition with the referee in bankruptcy appointed after the decease of the referee to whom the Cheney bankruptcy case was first referred, asking leave to amend the written objection to the sale of assets filed by the attorney for the American Ammonia Company on September 26, 1918, by substituting therefor a formal proof of its claim, and also praying that the value of the stock held by the American Ammonia Company as security be appraised, and that it be allowed to participate in any dividends declared or to be declared in said bankruptcy estate as a creditor to the extent of the excess of the claim of the American Ammonia Company above the value of the said securities. This petition was denied, and upon review the District Court has approved the order of the referee.

The District Court has found that, in the course of proceedings before the referee upon the petition to sell the assets of the Cheney estate, Mr. Anderson, counsel for the American Ammonia Company, stated orally that his client had a claim of upwards of $130,000 for which it held collateral and that it objected to its collateral being sold by the trustee.

The District Court further found that the only written document presented to the trustee or filed in court relating to the claim of the American Ammonia Company was

the objection to the sale filed by Mr. Anderson; that the Ammonia Company became bankrupt in 1922 without having realized on its collateral and applying the proceeds on its claim, and that its stock is worthless; that "there is nothing indicating any intention on the part of the Ammonia Company seasonably to assert its rights as a creditor; that it never instructed its counsel to prove its claim; it resisted any effort on the part of the trustees to sell the securities belonging to the bankrupt; it never pursued any of the courses open to it with reference to liquidation of that security, an essential step to any proof; that there is no evidence that the Ammonia Company omitted to file the proof through oversight, misunderstanding, or mistake; that the learned referee was not unwarranted in inferring that the Ammonia Company knew what it was about and intentionally failed to prove."

Section 57n of the Bankruptcy Act (Comp. St. § 9641) contains the following limitation on the proof of claims: "Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after * * * such time, then within sixty days after the rendition of such judgment: Provided, That the right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer."

Both the referee and the District Court have ruled that because of this section the petitioner has lost the right to prove this claim of the American Ammonia Company after more than five years had elapsed since the adjudication in bankruptcy.

The requisites of a proof of claim are pointed out in section 57a of the act:

"Proof of claim shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and if so what, securities are held therefor, and whether any, and if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor."

[2] Nothing approaching any compliance with these requirements was filed by the American Ammonia Company in the Cheney bankruptcy proceedings. While the claim of that company was included in the schedule of creditors, this would not relieve it from a proof of its claim. In the objection filed by its counsel to the sale of its stock it did not make any claim against the estate

of Benjamin Cheney, but objected to the sale because it had a lien upon these shares of stock in the amount of $130,000. The oral statement made by its counsel before the referee that it had a claim against the Cheney estate of upwards of $136,000 was evidently made to show its right to file its objections to the sale of its stock. While the courts have been liberal in the allowance of amendments of the proofs of claims, yet in all the cases cited by the counsel for petitioner there was some written document, however informal, which could be recognized as a claim made against the estate of the bankrupt and which could be the subject of amendment.

In this case no claim was made by the creditor against the estate. The statement of its counsel that it objected to the sale of its stock because it had a lien upon the same of upwards of $130,000 could not be distorted into the assertion of a claim against the estate. As a secured creditor it could rely upon its security, believing it to be sufficient to pay its claim in full. The notes of the bankrupt which it held were all given for this stock and partial payments had been made upon the same, as appears from the record. It is evident that it did not wish, for reasons of its own, to have its stock sold as such sale might show it to be of little value. It might have proved its claim as a secured creditor for the amount which the court should determine the face of its notes exceeded the value of the collateral which it held. Until there was an offer to prove its claim there was no necessity under section 57h to ascertain the value of the securities held by it so that the excess of its claim above the value of such securities might be determined. As no proof of claim was filed by it within a year after adjudication and nothing done by it which could be distorted into an informal claim, there was nothing which could be the subject of amendment.

The third edition of Remington on Bankruptcy, § 889, states the law as follows:

"Of course there must have been an original process duly signed within the year; otherwise there would be nothing by which to amend; and the power of amendment is not to be distorted to let in dilatory creditors who have filed no proofs within the limited year."

A large number of cases are cited in support of this statement.

The learned district judge in his opinion pointed out the extreme difficulty in now ascertaining the value of the stock at the time of the adjudication of bankruptcy, as it has now become worthless and never listed

on the market. The granting of an amendment was discretionary, and the refusal of the learned district judge to allow the amendment was not an unwarranted exercise of discretion.

[3] After the oral argument and briefs in this case had been submitted by counsel, further argument was invited by the court upon the following question:

"Was litigation involving the claim of the American Ammonia Company within the meaning of section 57n of the Bankruptcy Act begun during the year succeeding the adjudication in bankruptcy and pending at the time of the beginning of the present proceedings?"

This question has been argued by counsel and briefs submitted.

It is contended by counsel for the petitioner that the petition of the trustee in bankruptcy of the estate of Benjamin P. Cheney for leave to sell assets at public or private sale and the objection to the sale which was filed by the attorney of the American Ammonia Company constituted litigation in the sense in which that word is used in section 57n, and that, by his petition, the trustee presented for the determination of the court the value of all the assets of the estate held by secured creditors; that the court did not determine the value of the American Ammonia Company stock, and the petition is still pending as to that; that, under the above-named section of the Bankruptcy Act, the American Ammonia Company has the right to prove its claim at any time within sixty days after final action upon this petition.

The purpose of the exception in this section was clearly to allow further time in which the owner of an unliquidated claim in process of liquidation might file a proof of the same.

The claim of the American Ammonia Company was not an unliquidated one, whose validity or amount was in dispute and being litigated. There was nothing to prevent or excuse its being seasonably filed and proved and sharing in dividends for the excess of its face value over the value of the collateral by which it was secured. Under section 57h of the act the value of collateral security is to be determined by selling the same pursuant to the agreement under which it was delivered to the creditor, or by the creditor and trustee, "by agreement, arbitration, compromise, or litigation as the court may direct." The court never issued any direction for the determination of the value of the stock of the American Ammonia Company.

Upon the petition of the trustee the following order was entered:

"In the above-entitled cause, notice having been given to all creditors and objections to said petition having been made on behalf of J. R. Williston & Co. and the American Ammonia Company, but no objection being made to the allowance of said petition to the extent specified by the following order, it is

"Ordered and decreed that Allan Forbes, trustee in bankruptcy of the estate of Benjamin P. Cheney, have leave to sell at public or private sale and upon such terms and at such prices as he may approve, without further notice to creditors or others, any and all assets of said estate except the following: The interest of the bankrupt in certain stock of the American Ammonia Company and any interest he may have in the estate of his late father, Benjamin P. Cheney, Sr., and any interest he may have in the stock or bonds of the Gila Sulphide Company and the said petition to the extent above mentioned is allowed."

The order finally disposed of the petition of the trustee, and, if he should desire to obtain leave to sell the assets specifically excepted in the order, it would be necessary for him to file another petition. This he did not do, nor did he ask the court to direct the determination of the value of the stock of the American Ammonia Company "by agreement, arbitration, compromise, or litigation." There was therefore nothing pending after the above order of the court was entered which could be in any way characterized as litigation for liquidating the claim of the American Ammonia Company.

If it can be said that the filing of a petition for the sale of assets held as collateral security by a creditor is the institution of litigation for the liquidation of the secured claim, there has been no such petition pending since the above order of the bankruptcy court was entered.

In 1752 the petition to revise is dismissed.

In 1756 the decree of the District Court is affirmed, with costs to the appellee in this court.

ANDERSON, Circuit Judge (dissenting). The questions involved in this case are of importance, not only to the petitioner, but in their relation to the general scope and effect of our Bankruptcy Law (Comp. St. §§ 9585–9656). I cannot convince myself that the result is right.

Cheney's trustee in bankruptcy contests the right of a creditor for more than $130,-000 to share in a bankrupt estate, which

now, nearly seven years after adjudication, is in a position to pay a dividend of 75 to 90 per cent. The case involves more than $100,000.

The questions presented should be considered in the light of certain general bankruptcy principles. In ordinary bankruptcy, this case, not composition (Nassau Smelting & Refining Works v. Brightwood Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013), the bankrupt estate belongs, beneficially, to the creditors, not to the trustee, who is an administrator only. While it is the duty of the trustee to contest false and fictitious claims (Chatfield v. O'Dwyer, 101 F. 797, 42 C. C. A. 30), and of the bankrupt (section 7, subd. 7 [Comp. St. § 9591]), to disclose to his trustee the proving of any false claims against his estate, the act nowhere makes it the duty of the trustee to contest honest and lawful claims on merely technical grounds for the purpose of increasing the dividend of part of the creditors at the expense of other honest creditors. Statutes of limitations are ordinarily not meritorious defenses. I find nothing in the act, or in the adjudicated cases, making it the duty of the trustee to set up the statute of limitations against an honest creditor for the benefit of other creditors. The provision in section 57n, requiring claims to be proved within one year after adjudication, is grounded upon the theory that the trustee will within that year have the estate in condition to distribute. It is a provision purely for the benefit of the beneficial owners of the estate, so that they may get their money seasonably. Compare section 47 (2), being Comp. St. § 9631, which, in terms, requires the trustee to "close up the estate as expeditiously as is compatible with the best interests of the parties in interest." Partial dividends are also provided for. Section 65b (Comp. St. § 9649). Plainly, the dominant features of the act are: Equality of treatment of honest creditors, and speed in liquidating and distributing the assets. The main burden of accomplishing the latter result rests upon the trustee.

In this case the trustee has been at least as slow in bringing the estate to the distribution point as the appellant has in making technically accurate proof of claim. A trustee who takes nearly seven years to get an estate ready to distribute has but poor standing, if any, to object to a creditor's having a like period to make a formally accurate proof of a claim, duly scheduled and referred to by the District Court as "a just claim." Formal proof of a scheduled and

admittedly valid claim is a very perfunctory act, having little relation to business realities and rights. Cf. Haley v. Pope, 206 F. 266, 124 C. C. A. 330.

Meantime in this estate more than two-thirds of the claims of the long-delayed creditors have been purchased in behalf of the bankrupt's mother, and her attorney has now purchased the bankrupt's interest in his father's estate for $243,000 in cash, and a waiver of dividends on these purchased claims of $675,000. The record does not disclose what other assets are available for distribution; nor the exact amount of claims proved. But it is clear enough that in this case the administration has produced neither speed nor equality of treatment, and that the present decision will greatly increase the inequality of treatment, already inferentially apparent from the purchase of claims in behalf of the bankrupt's family. These facts have a bearing on the power of the trustee to maintain this contest. The purchaser of the bulk of the claims having, on the record before us, waived all right to a dividend, cannot, and, so far as now appears, the other creditors do not, object to the allowance of the appellant's claim. Under such conditions I doubt the power of the trustee; but, if he has, technically, such power, he ought not to use it.

But there is much more to this case. In section 57n is a provision that, if claims are liquidated by litigation, they may be proved within sixty days after the end of the litigation. I think there was, and still is, litigation involving such liquidation, which should now be brought to an end, so that the appellant may then, if he choses, within sixty days thereafter, file formal proof of claim.

The case as stated in the majority opinion does not, I think, sufficiently disclose the significance of the real proceedings.

In September, 1918, about eight months after the adjudication, the trustee filed an omnibus petition for leave "to sell at public or private sale all of the assets, property, and estate of the said bankrupt," reciting that these assets were not such as were ordinarily sold on the stock exchange or at public auction. In argument, it is agreed that most, if not all, of the assets, including the bankrupt's interest in his father's estate, were subject to liens, or alleged liens, and were also of a speculative or uncertain character. The petition was obviously intended, and was construed by the parties as intended, to procure a sale of a mass of liened assets, free from liens. Thereupon the appellant's predecessor, the American Ammonia Company, appeared, generally, by

counsel, and objected to the sale of the Ammonia stock, except subject to its asserted lien for "upwards of $130,000." If it might have questioned the jurisdiction invoked by the trustee, and compelled the trustee to resort to a plenary suit, it did not. Taubel v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770, and cases cited; In re Schweitzer (D. C.) 217 F. 495. It submitted unconditionally then, and submits now, to the jurisdiction of the bankruptcy court to determine all its rights, as creditor and to security. On such submission the trustee had at least constructive possession of the Ammonia stock. Indeed, it does not appear (unless inferentially) that he had not physical possession thereof. I do not understand that the referee's full jurisdiction over the Ammonia Company's debt and security is questioned. Certainly no one but the lienholder could question it, and it did not and does not. In re Kinsey Co., 184 F. 694, 106 C. C. A. 648. The objection to a sale, at that time, except subject to the objector's alleged lien, was in legal effect an appeal to the discretion of the court which, in its very nature, involved a submission to the jurisdiction. Experienced counsel rarely object to the summary jurisdiction; for it is quicker and cheaper than a plenary suit, and adequately safeguarded by right of appeal.

Shortly after the creditor's appearance, it was stipulated by the trustee and the Ammonia Company that there should be no sale of the Ammonia stock or of the bankrupt's interest in his father's estate without further proceedings, on due notice. Before any order was made another creditor, J. R. Williston & Co., appeared as objector; so that the stock and bonds of the Gila Copper Sulphide Company were also excepted from the order of sale, which was, as to the balance of the assets—whether incumbered or unincumbered the record does not show—then allowed.

This petition for sale free from lien was, under the circumstances recited in the petition, a proper proceeding. 6 Remington, (3d Ed.) § 2683; New England Piano Co., 122 F. 937, 59 C. C. A. 461; In re National Boat & Engine Co. (D. C.) 216 F. 208, 211 (an instructive opinion by Judge Hale of the Maine District); In re North Star Co. (D. C.) 252 F. 301, and cases cited (an illuminating opinion by Judge, now Mr. Justice, Sanford, citing many cases). It might have been allowed even if the alleged lienholder had objected. 6 Remington, §§ 2575 –2578; In re Shoe & Leather Reporter, 129 F. 588, 64 C. C. A. 156; 6 Remington, §§ 2581, 2589, 2591.

Such sales, free from lien, are ordered, not merely as matter of power, but as matter of sound discretion—and even against objection by an alleged lienholder—if and when there is reasonable doubt as to the value of the security, or any question as to the validity or the extent of the alleged lien. 6 Remington, § 2583, and cases cited; In re Littlefield, 155 F. 838, 84 C. C. A. 72.

It is then clear, on principle and on authority, that these proceedings were litigation within the meaning of section 57n, involving all possible questions as to the Ammonia Company's claim and the validity and extent of the security therefor. This seems to me too clear to require illustrative argument. But I observe that, without further pleadings, the trustee might have denied that the alleged debt of $136,000 ever existed; he might have claimed payment in full or in part; he might have contended that, if existent, it was never secured by any lien on the stock; or that, if once so secured, the lien had been in whole or in part discharged. Other conceivable questions might have been raised. So that, if a sale had been ordered, free from lien for, say, $100,000, all such contentions—both as to the appellant's debt and the value and application of security therefor—would have had to be determined in making an order for the disposition of the proceeds of the sale. When so disposed of, the debt would either have been fully paid out of the proceeds of the sold security or any unpaid balance would have been provable against the general assets. Section 57h; Powell v. Leavitt, 150 F. 89, 80 C. C. A. 43. "The phrase 'liquidated by litigation' is general"; as Judge Lowell said in 150 F. 91, 80 C. C. A. 45. It covers, I think, cases of preference (section 57g), of security (section 57h), or of unliquidated damages (section 63b). Cf. 2 Remington, §§ 849, 862, 863, 879, 880.

The conclusion seems to me to be irresistible that there was litigation under section 57h, and within the meaning of section 57n.

But the majority hold that, even if there was such litigation, the referee's order in 1920 "finally disposed of the petition"; so that, if the trustee "should desire to obtain leave to sell the assets specifically excepted in the order, it would be necessary for him to file another petition." With this view I cannot agree. The petition must be read with the stipulation and the rest of the proceedings. The stipulation provided, in terms:

"Such *further* notice to be given by the trustee to creditors as the referee in bank-

ruptcy may direct, *before the entry of any order with reference to the sale of the said* ammonia stock, or interest in the estate of Benjamin P. Cheney, Sr."

This amounts to an agreement to suspend, to the extent indicated, proceedings under the blanket petition. It contemplates further proceedings *under this petition*—not a new petition. The order made was consistent with the stipulation; it was therefore an interlocutory, not a final, order. It follows that the petition remains undisposed of. The jurisdiction sought by the trustee, assented to by the Ammonia Company, and asserted by the referee over the sale of this stock, free and clear, still subsists, and cannot now be questioned, either by the trustee or by the creditor. And the Ammonia Company had, as I think, a right to regard the status created as the result of the stipulation and interlocutory order as continuingly satisfactory to the trustee, unless and until the trustee should, on due notice, call up the petition for further action. Of course the Ammonia Company had a like right.

The probable reason why the petition was never pressed for further hearing was because, while litigation was being carried on as to the bankrupt's interest in his father's estate (Woodard v. Snow, 233 Mass. 267, 124 N. E. 35, 5 A. L. R. 1381; Forbes v. Snow, 239 Mass. 138, 131 N. E. 299, 16 A. L. R. 546; Forbes v. Snow, 245 Mass. 85, 140 N. E. 418), the Ammonia stock became worthless. But the present questions of law are precisely the same as though, pending this suspension, the Ammonia stock had become worth $500,000, and the chief asset of the estate. If the Ammonia stock, rather than the Cheney estate, had developed large value, the contentions now made would never have been heard of.

I conclude that the litigation, within the meaning of section 57n, is still pending.

The questions so far discussed were not raised and discussed before Judge Morton or dealt with in his opinion. He disallowed the petition as matter of discretion and not as matter of law. Agreeing with him that he had power to allow it, with deference I venture to disagree on the question of discretion. He says, and I agree: "It is settled by authoritative decisions that courts of bankruptcy should exercise great liberality in allowing amendment of insufficient or defective proofs of claim. In re Basha, 200 F. 951, 119 C. C. A. 335; Hutchinson v. Otis, 190 U. S. 552, 23 S. Ct. 778, 47 L. Ed. 1179; Id. (C. C. A. 1st), 115 F. 937, 53 C. C. A. 419; In re Kessler, 184 F. 51, 107 C. C. A. 13, 25 Am. Bankr. Rep. 512

(C. C. A. 2d); In re Salvator Brewing Co., 193 F. 989, 113 C. C. A. 626, 28 Am. Bankr. Rep. 56. It is also settled that the mere scheduling of a claim is not sufficient proof of it."

But his conclusion is thus stated:

"It is not to be lost sight of that the Ammonia Company had a just claim, for a large amount, which will be lost if the proof is not permitted; but it must also be remembered that the present situation is its own fault. I doubt whether, as a matter of law, what was done on its behalf is susceptible of amendment into a proof of claim; and I am clear that the equities in favor of the claimant are by no means strong enough to warrant such an extreme exercise of discretion in its favor as it invokes. *It is upon this latter ground that I rest my decision, affirming* in so doing the judgment and order of the referee." (Italics mine.)

I think the scheduling of the claim, supplemented by the proceedings before the referee, was enough so that there was power to allow amendment.

In the objection to the sale filed by counsel for the Ammonia Company is the statement that the Ammonia Company "has a lien on said shares to the amount of upwards of $130,000." The words "to secure a debt due from the bankrupt" do not explicitly appear. But the schedule, which was a part of the record before the referee and the trustee, showed that the alleged lien was for a debt due from the bankrupt, not from a third party. All the parties must have understood, and did understand, that this was an assertion in writing of a debt of upwards of $130,000 due from the bankrupt—not from another debtor. This was enough to lay a basis for an amendment. See In re Patterson Shipbuilding Co. (C. C. A.) 293 F. 190, 192; In re Fairlamb (D. C.) 199 F. 278; In re Drexel Hill Motor Co. (D. C.) 270 F. 673; J. B. Orcutt Co. v. Green, 204 U. S. 96, 27 S. Ct. 195, 51 L. Ed. 390; 2 Remington, Bankruptcy, §§ 747, 751; In re Louis J. Bergdoll Motor Co. (D. C.) 230 F. 248.

It also seems to me clear that the equities are in favor of the claimant.

The Ammonia Company did nothing to injure other creditors or to impair its right to equality of treatment in the general assets after applying the value of its security. True, it objected, in 1918, to a sale of the Ammonia stock. But the record indicates that the trustee, on consideration, adopted the Ammonia Company's view that a sale at that time was not in the interest of the es-

tate. For aught that appears, that stock then had large prospective, although little immediate, market value. If the trustee had insisted on a sale and the referee had so ordered, doubtless the secured creditor might have bid it in, thus acquiring for his own sole benefit any possible increment of value. 6 Remington, § 2614.

At any rate, as there was to be litigation to determine the value of the bankrupt's interest in his father's estate, the record indicates that all parties were satisfied to preserve the status quo as to the Ammonia stock and the Gila Sulphide stock. Under such circumstances, no creditor, secured or unsecured, has any equities against any other creditor. It was in the common interest, as then considered, to suspend sale of these three items of assets, pending further development as to their value. The facts that the Sulphide stock is of unknown value, that the Cheney estate has proved to be of large value, and the Ammonia stock worthless, make no difference whatever either in the questions of law or in the equities which may guide on questions of discretion. The fundamental principle of equality of treatment of honest creditors is the rule that should control in this case.

While the purchase by the bankrupt's mother of two-thirds of his proved and allowed debts, and also the chief asset of his estate, is not, in form, a composition with his creditors, yet, in business results, both to the bankrupt and to the proving creditors, and in equities arising to the scheduled but (so far) nonproving creditors, the situation is closely analogous to that created by an outright offer of composition; the bankrupt's estate goes back to his family through a trade with his creditors. Nassau Smelting & Refining Works v. Brightwood Foundry Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013. A trade has superseded normal bankruptcy as to two-thirds of the creditors. Cumberland Glass Co. v. Dewitt, 237 U. S. 447, 454, 35 S. Ct. 636, 59 L. Ed. 1042.

This quasi composition undertaking has obviously been facilitated by the delay of nearly seven years in bringing the estate to the distribution point. Such delay wearies and discourages creditors to the point of being easy sellers of their claims. Justice thus delayed is justice denied. Under such circumstances courts should not be astute to prevent scheduled and admittedly honest creditors from proving and participating in the bankrupt estate. Speculation with property and rights in custodia legis is not to be encouraged. This is a case in which

the one-year statute of limitations has no just application; one in which it should not be applied if there is any legal way of avoiding the application.

I find at least two legal ways of avoiding this unjust result.