### BARKS v. KLEYNE.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1926.)

No. 7168.

1. **Bankruptcy �köö11.**

Bankruptcy court is court of equity, and one asking aid therefrom must come with clean hands.

2. **Bankruptcy �køö312.**

Under Bankruptcy Act (Comp. St. § 9585 et seq.), creditor of bankrupt may file valid indebtedness as unsecured claim after security had been annulled in state court because in fraud of creditors.

3. **Bankruptcy �køö312.**

Omission in present Bankruptcy Act (Comp. St. § 9585 et seq.) of former provisions for forfeiture or penalty in case of creditor receiving property in fraud of act *held* to show legislative intent that no forfeiture or penalty should be imposed.

4. **Bankruptcy �køö345.**

State law requiring postponement of payment of indebtedness after annulment of security given in fraud of creditors does not govern as to order of payment in bankruptcy proceeding, in view of Const. U. S. art. 1, § 8.

5. **Bankruptcy �køö336.**

Amendment of claims against bankrupt, after state court decree annulling security for allowance as unsecured claims is permissible, without conforming to Bankruptcy Act, § 57g (Comp. St. § 9641), relative to waiver of security.

6. **Bankruptcy �køö336.**

Amendment of claim against bankrupt after decree of state court annulling security, for allowance as unsecured claim, *held* not original claim, so as to require filing within time required by Bankruptcy Act, § 57n (Comp. St. § 9641).

7. **Bankruptcy �køö336.**

Claims filed against bankrupt as secured claims were subject to amendment for allowance as unsecured claims after state court decree annulling security on ground that it was given in fraud of creditors.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

In the matter of the bankruptcy of H. C. Kleyne. From a decree allowing the claims of L. Kleyne, C. L. Barks, trustee, appeals. Affirmed.

James B. Lindsay, of Sheldon, Iowa (George T. Hatley, of Orange City, Iowa, on the brief), for appellant.

Gerrit Klay and Tennis E. Klay, both of Orange City, Iowa, for appellee.

Before STONE, KENYON, and BOOTH, Circuit Judges.

STONE, Circuit Judge. This is an appeal by the trustee of the bankrupt, H. C. Kleyne, from an order allowing two claims (as unsecured) to appellee, L. Kleyne, the father of the bankrupt.

The adjudication of bankruptcy, on voluntary petition, was on January 18, 1922. On February 6, 1922, appellee filed two claims. The first was upon a "promissory note for $3,000, duly executed and delivered, * * * said note representing the rent of 200 acres of land in Sioux county, Iowa, for the crop season of 1920." Security was stated as being a chattel mortgage and a "warranty deed given as mortgage" by the bankrupt. The second was for $2,400, "the agreed rental for the crop season of 1921" on described land. Security was stated as being the above "warranty deed with effect of mortgage." Both the mortgage and the deed were executed and delivered more than four months before the adjudication of bankruptcy. Proceeding under section 70e

of the Bankruptcy Act (Comp. St. § 9654), the trustee brought actions in the state courts to cancel this mortgage and this deed. The trial courts dismissed these bills but the Supreme Court of the state reversed such decrees and ordered entry of decrees annulling the mortgage and the deed on the ground that each was made to defraud and hinder creditors. February 13, 1925, appellee filed his pleading with the referee wherein he set forth the earlier filing of the above claims as secured; the annulment of the security in the state court suits; the execution of a deed to the trustee for the land covered by the above warranty deed; a waiver of all claim for security and prayed allowance of "said claims now on file as unsecured claims." It is from such allowance, that the trustee appeals.

The contentions of the trustee are:

(1) The participation by appellee in the actual fraud consummated by the mortgage and the warranty deed bars him from participating, as an unsecured creditor, in the proceeds of the property covered thereby.

(2) The fraudulent transfers were governed by the provision of the state law which prohibits participation in proceeds of fraudulently transferred property by a defeated fraudulent grantee until bona fide creditors have been fully satisfied and section 70e of the act subrogates the trustee to the rights of such bona fide creditors.

(3) There could be no surrender of security under section 57g of the Act (Comp. St. § 9641) because the litigation setting aside the deed and mortgage was conducted by the trustee under section 70e, applying to conveyances void under state law and executed more than four months before adjudication of bankruptcy.

(4) The claim for $3,000, as unsecured, was not filed within sixty days after liquidation by litigation as required by section 57n of the act.

(5) When the claims were originally filed, appellee was not a creditor but a fraudulent grantee, therefore, such claims are not subject to amendment.

1. There is no dispute that the bankrupt owed appellee a valid indebtedness for rent during the crop years of 1920 and 1921 respectively. It is undisputed that nothing has been paid thereon. The state Supreme Court did not pass upon the existence of the above indebtedness, which was not questioned, but upon the validity of the warranty deed and the chattel mortgage which were given either as security for or in payment of the above indebtedness. The pur-

pose of the suits in the state courts was to recover the property conveyed by the deed and the mortgage. The result, and the only result, of those suits was to defeat those conveyances and return that property to the estate of the bankrupt.

It is unimportant here whether such conveyances were in payment or as security. If in payment, the annulment would restore the original indebtedness. If as security, the debt secured would not be obliterated by the failure of the security.

[1, 2] Therefore, the bald legal contention is that a valid debt (entirely unsatisfied) cannot be proven against a bankrupt estate if the creditor has been guilty of actual fraud on other creditors in connection with conveyances to him in payment or in security of such debt. We think this contention is answered by the case of Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 S. Ct. 443, 49 L. Ed. 790. The effect of such a contention is to punish the fraud by a penalty or a forfeiture. No provision of the Bankruptcy Act authorizes a penalty and equity abhors forfeitures of clear legal rights. It may be said that a bankruptcy court is a court of equity and one asking aid from a court of equity must come with clean hands. This, generally speaking, is true. In this instance, however, we are relieved of the task of determining whether appellee came clean handed with his claims as originally filed or whether he is now coming clean handed with his altered claims. The Bankruptcy Act, as construed in the Keppel Case, is determinative. That act, as one of its fundamental purposes, aims at "equality of distribution of the assets of a bankrupt estate" (Keppel v. Tiffin Savings Bank, 197 U. S. 356, 361, 25 S. Ct. 443, 445, [49 L. Ed. 790]), among the creditors; and the Keppel Case holds clearly that whenever the attempted advantage or preference "has been abandoned or yielded up [voluntarily or by compulsion], and thereby the danger of inequality has been prevented, such creditor is entitled to stand on an equal footing with other creditors and prove his claims" (pages 363, 364 [25 S. Ct. 446]).

It is urged that the Keppel Case is not determinative here because no actual fraud was present there. No actual fraud was there present but that consideration was not controlling, as is shown by the opinion. After stating that "the purpose of Congress when a forfeiture or penalty was intended not to leave it to arise from mere construction, but to expressly impose such penalty or forfeiture" (page 365 [25 S. Ct. 446]),

the opinion discusses the act of 1800 (2 Stat. 19), "wherein numerous penalties and forfeitures were explicitly declared" (page 365 [25 S. Ct. 446]); the act of 1867 (14 Stat. 536, § 39), which provided that a creditor receiving property in fraud of the act "shall not be allowed to prove his debt" (page 366 [25 S. Ct. 447]); the amendment of 1874 (18 Stat. 178, § 12), which provided that such actual fraud should limit proof to not more than "a moiety of his debt" (page 371 [25 S. Ct. 448]), and finally the act of 1898 (Comp. St. § 9585 et seq.), which contained no limitation upon proof by such a creditor. The court then concludes (page 373 [25 S. Ct. 449]):

"When, therefore, Congress in adopting the present act omitted to re-enact the provision of the act of 1867, from which alone the penalty or forfeiture arose, it cannot in reason be said that the omission to impose the penalty gives rise to the implication that it was the intention of Congress to re-enact it. In other words, is cannot be declared that a penalty is to be enforced because the statute does not impose it."

[3] The act, as at present, authorizes no such forfeiture or penalty and the reasoning of the above opinion is directly applicable. That reasoning is that actual fraud was penalized by the acts of 1800 and 1867 and the amendment of 1874; that the omission of all such character of penalties from the 1898 act must be construed as a legislative intent that none should be imposed. As the present act is, in that respect, identical with the 1898 act, we must accept the Keppel Case as controlling and hold that appellee may, in so far as the federal law is concerned, file his valid indebtedness for rent as an unsecured claim on a parity with other unsecured debts. In addition to the Keppel Case, see Page v. Rogers, 211 U. S. 575, 29 S. Ct. 159, 53 L. Ed. 332. Also, two cases where actual fraud was present, Jones v. Third National Bank, 13 F.(2d) 86 (this court), and In re Louis J. Bergdoll Motor Co., 233 F. 410, 147 C. C. A. 346 (3d C. C. A.); Id. (D. C.) 230 F. 248, 252.

[4] 2. But it is contended that the state law requires postponement of payment of this indebtedness from the proceeds of the property fraudulently conveyed until the other claims have been satisfied therefrom and that the state law governs. We need not examine the state law because it does not govern in matters of this character. This is not a question of the validity of a debt but of the order of payment in a bankruptcy proceeding of a concededly valid indebtedness. The purpose of the constitutional grant to Congress of power concerning bankruptcy was to secure "uniformity" throughout the country in such matters. That grant was "to establish * * * uniform laws on the subject of bankruptcies throughout the United States" (article 1, § 8). Congress has enacted the Bankruptcy Act wherein it declares its policy in that respect. As to creditors, that policy, generally speaking, is that all valid debts shall share alike in the property, subject only to valid liens thereon in favor of particular creditors. The postponement in payment sought here is not in the nature of a lien nor incumbrance favoring innocent creditors but is purely a penalty placed upon a creditor for attempting to fraudulently defeat or hinder such innocent creditors. If the act, irrespective of the particular state law, is to be interpreted as not permitting such penalty, there is stronger reason for denying such effect to a state law because to do otherwise would tend to disturb uniformity of operation of the act in the different states. In re Hurst, 194 F. 830, 833, 114 C. C. A. 534 (4th C. C. A.); Id. (D. C.) 188 F. 707; In re Elletson Co. (D. C.) 193 F. 84, 87, are cases where the state law was denied such effect. Also see Wells v. Lincoln, 214 F. 227, 130 C. C. A. 641, which was a case where the right to deny participation of the culpable creditor "to receive any dividends in his said claim out of the proceeds" from certain property conveyed to him in actual fraud of other creditors was denied by the Circuit Court of Appeals for the Ninth Circuit. Also In re Cahill (D. C.) 208 F. 193, 194, to effect that no postponement of right to participate even where actual fraud. Also, Maxwell v. McDaniels, 195 F. 426, 429, 115 C. C. A. 328 (4th C. C. A.), where the trustee sought, unsuccessfully, to postpone a creditor who executed a conspiracy to delay and hinder other creditors and put them to loss and expense by vexatious, unfounded litigation. In the Maxwell Case, the court said (page 429 [115 C. C. A. 331]):

"We have had occasion to say in the case of Washington v. Tearney, 194 F. 830, 114 C. C. A. 534, decided at this term, that a court of bankruptcy is not a criminal court. It has no power to punish creditors for what they did in another court by forfeiting rights to which in it they would otherwise be clearly entitled. If the bill of complaint filed by the creditor is a part of a fraudulent scheme and its filing caused loss to other creditors, then, if the relation of

that loss to the action of the creditor is such as to make the creditor liable for it, such liability may be enforced in a direct proceeding in whatever forum has jurisdiction. If it has no such relation, then the lack of jurisdiction in other courts to give redress cannot be supplied by the court of bankruptcy."

[5] 3. The contention that there could be no surrender by appellee under section 57g of the act need not be determined. It was the duty of the trustee to protect the estate by securing all property possible for distribution to the creditors, and to protect the creditors from inequality in that distribution by challenging all invalid conveyances or liens which would produce such inequality. At the same time, the act intended that valid claims should be properly presented and have due participation. When appellee filed his original claims as secured, he would have been put to proof as to the validity and as to the security thereof. The matter of security has been determined in the state court. The amendment or the change in the claims merely conforms them to the altered situation. No surrender clause in the act is needed to permit this conformity. As said in Keppel v. Tiffin Savings Bank, 197 U. S. 356 at 365, 25 S. Ct. 443, 446 (49 L. Ed. 790):

"Neither our Bankruptcy Act of 1800, 2 Stat. 19, nor that of 1841, 5 Stat. 440, contained a surrender clause or any provision generally denying the right of a creditor of a bankrupt to prove his debt in the event that he had received a preference. But, under those acts, bankruptcy courts must necessarily have exercised the power of protecting the estate by preventing a creditor having an otherwise provable debt who retained that which belonged to the estate from at the same time taking dividends from it."

Also see In re Abell, 198 F. 484, 117 C. C. A. 243 (this court).

The purpose of the surrender clause in section 57g is not to prescribe the only conditions under which or the only preferences which must or can be surrendered. It was much narrower: to prevent allowance of the claims or participation in the administration of the estate by creditors having certain designated preferences (which were in fraud of the act) until those preferences were abandoned. This narrower definition of the meaning and effect of that provision has been clearly stated by Judge Sanborn, for this court, in Stevens et al. v. Nave-Mc-

Cord Mercantile Co., 150 F. 71 at 75, 80 C. C. A. 25.

[6] 4. It is contended that the claim for $3,000, as unsecured, was not filed within a year of the adjudication of bankruptcy nor within 60 days after liquidation by litigation in the state court as required by section 57n of the act. The claim, as unsecured, was not filed within a year of the adjudication. The opinion of the Supreme Court of the state, reversing the trial court, was filed October 24, 1924. Procedendo issued thereon to the trial court on December 19, 1924. Decree in accordance therewith was entered in the trial court on January 26, 1925. February 13, 1925, appellee filed the pleading herein changing his claim from a secured to an unsecured claim. Appellant contends that this pleading amounted to a new claim; that the "liquidation by litigation" (within the meaning of section 57n of the act) was on October 24, 1924, when the opinion of the Supreme Court was filed and not when the trial court entered its conforming decree on January 26, 1925, and that, therefore, the 60-day filing period allowed by the act (section 57n) had expired before February 13, 1925.

We need not determine this contention beyond stating that the pleading filed February 13, 1925, was not an original claim in form, intent or effect. It was an amendment of the claim filed February 6, 1922, a few days after the adjudication of bankruptcy. The only difference was that the claim as originally filed asserted certain security while the amendment expressly abandoned the security and asked allowance as an unsecured claim. This was an amendment. "Where a claim has been presented on the wrong theory, as, for instance, for a secured debt and it appeared that it was unsecured, the creditor should have an opportunity to amend so as to prove the correct amount of his unsecured claim. * * * " Collier on Bankruptcy (13th Ed.) p. 1139. Such amendment may be made more than a year after the adjudication of bankruptcy. Seligman v. Gray, 227 F. 417, 142 C. C. A. 113 (1st C. C. A.); Maxwell v. McDaniels, 195 F. 426, 428, 115 C. C. A. 328 (4th C. C. A.). Also see Hutchinson v. Otis, 190 U. S. 552, 555, 23 S. Ct. 778, 47 L. Ed. 1179 (Id., 115 F. 937, 53 C. C. A. 419 [C. C. A. 1st Cir.]), and In re Roeber, 127 F. 122, 62 C. C. A. 122 (2d C. C. A.).

[7] 5. The contention that the claims, as originally filed, cannot be subject to amendment because at the time appellee was not a creditor but a fraudulent grantee, is un-

sound. The limitation as to time of filing claims in section 57n must be determined by what was or was not filed and whether any subsequent filing is truly an amendment of what was theretofore filed. These claims, as originally filed, asserted that appellee was a debtor and had certain security. The amendment merely withdrew the claim to security therefor.

The decree must be and is affirmed.